68 S.W.3d 887 (2002)
K.T., Appellant,
v.
The STATE of Texas, Appellee.
No. 01-00-00618-CV.
Court of Appeals of Texas, Houston (1st Dist.).
February 14, 2002.
*888 Michael Ray McLane, Houston, for Appellant.
Lisa S. Hulsey Rice, Asst. County Atty., Houston, for Appellee.
Jacqueline Lucci, Asst. County Atty., Houston, for State.
Panel consists of Justices MIRABAL, NUCHIA, and PRICE.[*]

OPINION
MARGARET GARNER MIRABAL, Justice.
In this case, we must determine whether there is clear and convincing evidence to support K.T.'s court-ordered temporary commitment to Ben Taub Hospital and court-ordered treatment with psychoactive medication.[1] Because we conclude there is not, we reverse.

*889 FACTUAL AND PROCEDURAL BACKGROUND
On April 28, 2000, K.T. went to Ben Taub Hospital's emergency room requesting the removal of vaginal sutures. K.T. told the hospital staff that the sutures were from a gynecological procedure that was performed a few months earlier in Peru. K.T. also told the staff that she was pregnant. An examination revealed that K.T. was not pregnant and had no vaginal sutures.
After she was informed that no sutures were found, K.T. refused to leave the exam room and became verbally abusive to the staff. A psychiatrist was called for an evaluation and admitted K.T. to Ben Taub's mental health unit.
On May 1, 2000, Sonja Gurule, a hospital social worker, filed an application for court-ordered mental health services seeking to have K.T. involuntarily committed. The trial court issued an order of protective custody ordering that K.T. be kept at Ben Taub's mental health facility pending the hearing on her involuntary commitment. In the order, the court also appointed an attorney to represent K.T.
K.T.'s commitment hearing was held on May 9, 2000. Present at the hearing were K.T.'s court-appointed counsel, the State's counsel, and the trial judge; K.T. did not attend. At the conclusion of the hearing, the trial court ordered K.T. committed for inpatient mental health services for a period of not more than 90 days.[2] After signing the commitment order, the trial court then held a hearing on a petition to administer psychoactive medication filed by Dr. Danae Georges. At the end of the second hearing, the trial court signed an order to administer psychoactive medication. See Tex. health & Safety Code Ann. § 574.106 (Vernon Supp.2002).

BURDEN OF PROOF
On an application for court-ordered inpatient mental health services, the State is required to prove, by clear and convincing evidence, that:
(1) the proposed patient is mentally ill;
(2) as a result of that mental illness the proposed patient:
(A) is likely to cause serious harm to himself;
(B) is likely to cause serious harm to others; or
(C) is:
(i) suffering severe and abnormal mental, emotional, or physical distress;
(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.
Tex. Health & Safety Code Ann. § 574.034(a). The trial judge must specify which criterion forms the basis for the *890 decision to grant the State's application. Id. § 574.034(b).
In support of its order to involuntarily hospitalize K.T., the trial court stated in its judgment that it found by clear and convincing evidence that K.T. was mentally ill and made positive findings under subsections (a)(2)(A),(C)(i),(ii),(iii).[3]

STANDARD OF REVIEW
In her first issue, K.T. contends that the evidence is legally and factually insufficient to support the trial court's findings on which it bases her temporary commitment.
The clear and convincing standard is the degree of proof that will produce in the mind of the trier of fact "a firm belief or conviction" as to the truth of the allegations sought to be proved. In re K.C.M., 4 S.W.3d 392, 395 (Tex.App.-Houston [1st Dist.] 1999, pet. denied); T.G. v. State, 7 S.W.3d 248, 251 (Tex.App.-Dallas 1999, no pet). In conducting a legal sufficiency review, we consider only the evidence and inferences tending to support the fact finding, and we disregard all contrary evidence and inferences. In re K.C.M., 4 S.W.3d at 395; Johnstone v. State, 961 S.W.2d 385, 388 (Tex.App.-Houston [1st Dist.] 1997, no writ). If any evidence of probative force exists to support the finding, we will uphold the decision. In re K.C.M., 4 S.W.3d at 395. In reviewing factual sufficiency complaints, we review all the evidence to determine if it was sufficient to produce a firm belief or conviction in the fact finder of the allegations pleaded. T.G., 7 S.W.3d at 251. We will sustain a factual sufficiency challenge only if, after viewing all the evidence, we conclude the finding is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. In re K.C.M., 4 S.W.3d at 395.
To constitute clear and convincing evidence under Mental Health Code subsection 574.034(a), the evidence "must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." Tex. Health & Safety Code Ann. § 574.034(c).

DISCUSSION
As previously noted, K.T. was not present at the commitment hearing. The substance of the commitment hearing constitutes only slightly more than one page in the reporter's record:
THE COURT: Call Cause No. 88581.
[STATE'S COUNSEL]: Yes, Your Honor.
THE COURT: Counsel for the proposed patient ready?
[APPELLANT'S TRIAL COUNSEL]: Ready, Your Honor. And my client has *891 refused to appear at the hearing this morning.
THE COURT: All right.
[STATE'S COUNSEL]: The State asks counsel to stipulate to two certificates of medical examination; one from Dr. George[s], and one from Dr. Edythe Harvey, as well as the affidavit of applicant, Sonja Gurule.
All individuals if present and sworn in court today would testify to the contents of these documents.
[APPELLANT'S TRIAL COUNSEL]: So stipulated.
THE COURT: Which criteria?
[STATE'S COUNSEL]: One and three.[4]
THE COURT: You rest?
[STATE'S COUNSEL]: The State rests.
THE COURT: You rest?
[APPELLANT'S TRIAL COUNSEL]: We rest, Your Honor.
THE COURT: All right. I'll sign the order.
The trial court's judgment states that, based on the certificates of medical examination completed by Drs. Georges and Harvey, and the affidavit of Sonja Gurule, the trial court determined that the State had met its burden under the provisions of section 574.034, and that K.T. should be involuntarily committed.
Dr. Harvey completed her certificate on April 28, 2000the same day that K.T. came to Ben Taub's emergency room. There is no indication that Dr. Harvey had previously treated K.T. With regard to the bases for her diagnosis, Dr. Harvey explained in her certificate that:
Patient is delusional, paranoid, uncooperative, has been refusing to eat. Demands that sutures be removed from her vagina when none are present.... I am of the opinion that the Patient, because of [her] mental illness, presents a substantial risk of serious harm to self or others if not immediately restrained; that the detailed basis for such is as follows: Patient is delusional, paranoid, verbally abusive, uncooperative and is refusing to eat. She was refusing to leave ... gyn exam rm [sic] after being told she had no sutures in her vagina.... Emergency detention is the least restrictive means by which the necessary restraint may be effected, that the facts which form the basis for my medical opinion as to Patient's imminent risk of harm unless immediately restrained are: Patient does not appear capable of appropriately caring for herself at this time. She is at risk of harm to herself. She is delusional, paranoid and uncooperative. Refusing to eat.
Sonja Gurule, a social worker, signed her affidavit offered in support of the application for court-ordered temporary health services on May 1, 1999 and stated as follows:
[Patient] has tried to elope [leave] twice this morning. She appears paranoid with guarded behavior. [Patient] was admitted after seeing the OB/GYN requesting stitches be removed from her vagina. [Patient] did not have any stitches. She has been going to different hospitals requesting this procedure be done.... [Patient] refuses to answer questions unless she has attorney present.... [Patient] refuses to eat stating we may be putting medication in her food. [Patient] has poor insight and judgment and if not treated may continue to decompensate. [Patient] was recently *892 discharged from Austin St. Hospital.
Dr. Georges's certificate was completed on May 4, 1999. At that time, K.T. had been under her care for six days. In her certificate, Dr. Georges stated as follows:
[Patient] is delusional, paranoid, uncooperative. Believes there are sutures in her vagina that must be removed but exams have revealed no sutures evident. Believes she is pregnant, but ultrasound in E.R. showed no fetus and UPT was [negative]. [Patient] eats very little because she believes that hospital food is poisoned.... [Patient] suffering from psychotic disorder [with] delusions and paranoia.... [C]ondition rapidly deteriorating, [patient] unable to care for herself, at risk of causing harm to herself because of this.... [Patient] at imminent risk of decompensation and causing harm. [Patient] lacks insight and judgment as to her need for treatment and is at risk for further continued deterioration.
K.T. contends that this evidence is not legally and factually sufficient to show "a recent overt act" or a "continuing pattern of behavior" that tends to confirm either that K.T. (1) was likely to cause serious harm to herself, or (2) to show the deterioration of K.T.'s ability to function. See Tex. Health & Safety Code Ann. § 574.034(d).
We first address the statements made by Harvey, Georges, and Gurule that K.T. was mentally ill, "delusional, paranoid, verbally abusive, uncooperative," and had "poor insight and judgment." Texas courts have made it clear that expert diagnosis of mental illness, standing alone, is not sufficient to confine a patient for compulsory treatment. Mezick v. State, 920 S.W.2d 427, 430 (Tex.App.-Houston [1st Dist.] 1996, no writ); see also T.G., 7 S.W.3d at 251-52 (finding that physician's diagnosis that appellant suffered from "psychosis NOS" not sufficient to support commitment). Evidence that merely reflects that an individual is mentally ill and in need of hospitalization is no evidence the statutory standard has been met. Broussard v. State, 827 S.W.2d 619, 622 (Tex.App.-Corpus Christi 1992, no writ); see also Johnstone, 961 S.W.2d at 388; D.J. v. State, 59 S.W.3d 352, 357 (Tex.App.-Dallas 2001, no pet) (holding psychotic behavior, such has D.J.'s belief she had experienced a "dehumanizing" process that included undergoing laser surgery by satellite, being implanted with electronics, and being used as a guinea pig by unknown force was not alone sufficient to justify involuntary commitment under statute).
In Johnstone, a temporary commitment case, the State offered psychiatric testimony that Johnstone suffered from chronic schizophrenia, auditory hallucinations, paranoid thinking, was irritable, uncooperative, and hostile to the staff, and he refused to take his medication. Johnstone, 961 S.W.2d at 387. Based on this evidence, the trial court signed a temporary commitment order. Id. at 388. This Court held that the evidence was legally insufficient to show an overt act or continuing pattern of behavior tending to confirm deterioration of the proposed patient's ability to function, and therefore the State had not proven its case by clear and convincing evidence. Id. at 389-90.
In T.G v. State, the Dallas Court of Appeals also reversed a temporary commitment order for similar reasons. 7 S.W.3d at 252. In T.G., a doctor testified that T.G. suffered from "psychosis NOS" and that her ability to function would deteriorate, due to impaired insight, judgment and cognition, and fixated thinking that she was in the military, when she was not, and that a mail carrier was a person responsible *893 for her. Id. at 250. The doctor also testified that T.G. acted "bizarrely" and might harm herself because there was a concern that she sometimes forgot to turn off her stove's gas burners. Id. The T.G. court noted that the State's doctor did little more than testify to the conclusions required by the Mental Health Code. Id. The court reversed the trial court's commitment order finding that there was no evidence of an overt act or pattern of behavior to show that T.G. was likely to cause harm to herself or others, or that her ability to function independently would continue to deteriorate. Id.; see also In re Breeden, 4 S.W.3d 782, 788-89(Tex.App.-San Antonio 1999, no pet.) (finding no evidence of overt act or continuing pattern of behavior, even though doctors testified that patient was not eating properly and refusing medication, because medical testimony did not show malnutrition, but did show patient's dietary and medication decisions were based on his concern for animal rights).[5]
Here, the State contends that K.T.'s recurring "delusions" that the staff was putting poison or medication in her food shows her inability to care for herself. However, there was no evidence presented that K.T. was refusing to eat before she was involuntarily hospitalized, or that her refusal resulted in malnutrition or other harm. Further, K.T.'s belief that the staff was trying to put medication in her food may not have been delusional in light of the fact that Dr. Georges filed a petition to administer psychoactive drugs to K.T. on May 4, 2000.
K.T.'s refusal to leave the examination room on one occasion, and the fact that she had been to a number of hospitals complaining about non-existent sutures, does not tend to confirm that K.T. is likely to cause serious harm to herself, nor does it tend to confirm a deterioration of K.T.'s ability to function. Moreover, K.T.'s attempted elopements from Ben Taub demonstrate nothing more than that she did not want treatment and wished to leave the hospital.
K.T. may be mentally ill; however, evidence that tends to establish that an individual is mentally ill is no evidence that the statutory standard has been satisfied. Broussard, 827 S.W.2d at 622; T.G., 7 S.W.3d at 252. We stress that psychotic behavior alone is insufficient to justify involuntary commitment. T.G., 7 S.W.3d at 252.
In the present case, the experts' affidavits stated conclusions that mirrored the requirements of section 574.034, but the factual bases for their opinions are lacking. See Johnstone, 961 S.W.2d at 388. Based on our review of the evidence presented at the commitment hearing, we conclude that *894 the trial court could not have properly made the findings required in Mental Health Code subsection 574.034(a) by clear and convincing evidence because there was no evidence of a recent overt act or continuing pattern of behavior that tends to confirm the likelihood of serious harm to K.T. or a substantial deterioration of K.T.'s ability to function independently to provide for her basic needs. See Tex. Health & Safety Code Ann. § 574.034(a),(d)(1),(2).
We need not review the propriety of the order authorizing psychoactive medication. A trial court may not issue an order authorizing the administration of psychoactive medication unless the patient is under an order for temporary or extended mental health services. See Tex. Health & Safety Code Ann. § 574.106(a)(1); In re Breeden, 4 S.W.3d. at 790. Because its authorizing order is reversed by this opinion, the order authorizing psychoactive medication cannot stand. In re Breeden, 4 S.W.3d. at 790.
We sustain K.T.'s first issue. Because of the disposition of issue one, we need not address issues two through six pertaining to K.T.'s contention that her court-appointed counsel was ineffective. See Tex.R.App. P. 47.1.

CONCLUSION
We reverse (1) the trial court's judgment and (2) the order to administer psychoactive medication. We render judgment (1) denying the application for temporary mental health services, and (2) denying the petition for order to administer psychoactive medication.
NOTES
[*] The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.
[1] See Tex. Health & Safety Code Ann. §§ 574.034, 574.106 (Vernon Supp.2002).
[2] Although K.T. has already been released from her temporary commitment, her appeal is not moot. See State v. Lodge, 608 S.W.2d 910, 911-12 (Tex.1980). The Lodge court held that the doctrine of mootness does not apply to appeals from involuntary commitments for temporary hospitalization. Id. This conclusion was based, in part, on the observation that "commitment to a mental hospital can engender adverse social consequences to the individual whether it is labeled a stigma or if it is called something else." Id. at 912. This stigma continues even after release is obtained. See id.
[3] In its judgment, the trial court stated:

The Court ... finds that all terms and provisions of the Texas Mental Health Code have been complied with; and after considering all the evidence, testimony and Certificates filed herein, the Court finds by clear and convincing evidence that [K.T.] is mentally ill and as indicated below, the result of that mental illness:
is likely to cause harm to [herself];
....
(i) is suffering severe and abnormal mental, emotional, or physical distress;
(ii) is experiencing substantial mental or physical deterioration of [her] ability to function independently, except for reasons of indigence, to provide for [her] basic needs; including food, clothing, health, or safety; and
(iii) is not able to make a rational informed decision as to whether to submit to treatment.
[4] This apparently references the criteria set out in subsections 574.034(a)(2)(A) and (C); the State did not request, and the trial court did not find, that K.T. is likely to cause serious harm to others.
[5] See also Broussard v. State, 827 S.W.2d 619, 622 (Tex.App.-Corpus Christi 1992, no writ) (reversing commitment order on no evidence challenge despite evidence that patient had delusions, had been previously hospitalized for her mental illness, and was described as hostile and provocative); In re J.S.C., 812 S.W.2d 92, 95 (Tex.App.-San Antonio 1991, no writ) (finding insufficient evidence to show that patient could not care for himself outside hospital environment though evidence showed patient suffered from chronic schizophrenia, hallucinations, was catatonic sometimes, delusional and disoriented); but see Mezick v. State, 920 S.W.2d 427, 430 (Tex.App.-Houston [1st Dist.] 1996, no writ) (finding evidence sufficient because State showed that patient had history of threatening suicide, refused medication, and lost 30 pounds in three months); L.S. v. State, 867 S.W.2d 838, 842-43 (Tex.App.-Austin 1993, no writ) (affirming commitment for patient because evidence showed that patient deliberately gained 10 pounds in one day by drinking excessive water, was attacked by another patient for being intrusive, and habitually walked into traffic without looking).