Opinion issued October 23, 2003 














  
                                    
In The
Court of Appeals
For The
First District of Texas
 

 
 
NOS. 01-03-00576-CV
          01-03-00577-CV
____________
 
ELVIN WHITAKER, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from County Court at Law No. 3
Galveston County, Texas
Trial Court Cause Nos. 218610 and 218613
 

 
 
MEMORANDUM OPINION
          In this accelerated appeal, appellant, Elvin Whitaker, challenges the trial
court’s orders, following a jury trial, that he be involuntarily committed for extended
inpatient mental health services. In three points of error, appellant contends that the
evidence was legally and factually insufficient to support the jury’s findings, and that
the State was required to file a written application for court-ordered mental health
services. We reverse and render. 
Factual and Procedural Background
          Appellant was charged with two criminal misdemeanor offenses, Class A
assault (appellate cause number 01-03-00576-CV) and criminal mischief (appellate
cause number 01-03-00577-CV). A jury found appellant incompetent to stand trial
on these offenses, and appellant was then committed to Vernon State Hospital.
          Five months later, appellant was returned to the trial court from Vernon State
Hospital, and a second jury found that he was still incompetent to stand trial. The
trial court committed appellant to the maximum security unit of Vernon State
Hospital for a period of at least 60 days but not to exceed 12 months.
          Appellant appeals this second order of commitment. 
Legal Sufficiency of the Evidence
          In his first point of error, appellant argues that the evidence was legally
insufficient to support the jury’s findings that appellant was a danger to himself or
others and there was no evidence, apart from the psychiatric testimony, that
appellant’s condition would continue to deteriorate.
          On an application for court-ordered extended inpatient mental health services,
the Texas Mental Health Code requires that the State prove, by clear and convincing
evidence, that:
          (a)     (1)     the proposed patient is mentally ill; and
                    (2)     as a result of that mental illness the proposed patient:
                              (A)    is likely to cause serious harm to himself;
                              (B)    is likely to cause serious harm to others; or
                              (C)    is:
                                         (i)      suffering severe and abnormal mental, emotional, or
physical distress;
                                         (ii)     experiencing substantial mental or physical
deterioration of the proposed patient’s ability to
function independently, which is exhibited by the
proposed patient’s inability, except for reasons of
indigence, to provide for the proposed patient’s
basic needs, including food, clothing, health, or
safety; and
                                         (iii)    unable to make a rational and informed decision as
to whether or not to submit to treatment.
                    (3)     the proposed patient’s condition is expected to continue for more
than 90 days; and
                    (4)     the proposed patient has received court-ordered inpatient mental
health services . . . for at least 60 consecutive days during the
preceding 12 months.

Tex. Health & Safety Code Ann. § 574.035(a) (Vernon 2003). A trial court must
specify which criteria form the basis for its decision to grant the State’s application. 
Id. § 574.035(c) (Vernon 2003); K.T. v. State, 68 S.W.3d 887, 889-90 (Tex.
App.—Houston [1st Dist.] 2002, no pet.) (temporary orders). Here, the jury found
appellant was mentally ill and was likely to cause harm to himself and others. The
jury also found that appellant 
will, if not treated, continue to suffer severe and abnormal mental,
emotional, or physical distress and will continue to experience
substantial mental or physical; (sic) deterioration of his ability to
function independently to the extent and is unable to make a rational and
informed decision as to whether or not to submit to treatment.

          To establish a matter in dispute by clear and convincing evidence, a party must
present a degree of proof that will produce in the mind of the jury “a firm belief or
conviction” as to the truth of the matter asserted. K.T., 68 S.W.3d at 890 (citing In
re K.C.M., 4 S.W.3d 392, 395 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)). 
In conducting a legal sufficiency review, we consider only the evidence and
inferences tending to support the finding, and we disregard all contrary evidence and
inferences. K.T., 68 S.W.3d at 890; K.C.M., 4 S.W.3d at 395. If any evidence of
probative force exists to support the finding, we will uphold the decision. K.C.M.,
4 S.W.3d at 395. 
          To be “clear and convincing” under subsection (a), the evidence must include
expert testimony and evidence of a recent overt act or a continuing pattern of
behavior that tends to confirm, (1) the likelihood of serious harm to the proposed
patient or others, or (2) the proposed patient’s distress and the deterioration of the
proposed patient’s ability to function. Tex. Health & Safety Code Ann.
§ 574.035(e) (Vernon 2003).
          Appellant argues that the State failed to produce proof of any recent overt acts
indicating that he was a danger to himself or to others and there was no evidence,
apart from the psychiatric testimony, that appellant would continue to deteriorate.
          The evidence in this case consisted of the following: (1) testimony from Victor
R. Scarano, M.D., the psychiatrist who performed court-ordered examinations of
appellant before the two commitment hearings;


 (2) Dr. Scarano’s report; and (3) the
report of Joseph Black, M.D., the senior evaluating psychiatrist at Vernon State
Hospital. Appellant asserts that the expert testimony did not present any evidence of
overt acts indicating that he was a danger to himself or others, and Dr. Scarano’s
opinion of a continuing pattern of behavior that tended to confirm appellant’s distress
and deterioration was really just an opinion relating back to the mental illness.
          An expert diagnosis of mental illness, standing alone, is not sufficient to
confine a patient for treatment. K.T., 68 S.W.3d at 892; Mezick v. State, 920 S.W.2d
427, 430 (Tex. App.—Houston [1st Dist.] 1996, no writ). Additionally, evidence that
merely reflects a patient’s mental illness and need for hospitalization is not sufficient
to meet the State’s burden under section 574.034 of the Mental Health Code. See,
e.g., K.T., 68 S.W.3d at 892 (holding evidence of patient’s delusion that she was
pregnant and had sutures in her vagina not sufficient to meet required statutory
burden); D.J. v. State, 59 S.W.3d 352, 357 (Tex. App.—Dallas 2001, no pet.)
(holding evidence of patient’s psychotic behavior, delusions that she had undergone
surgery by satellite and had electronics implanted in her not sufficient to meet
required statutory burden); T.G. v. State, 7 S.W.3d 248, 251-52 (Tex. App.—Dallas
1999, no pet.) (holding evidence of patient’s delusion that she was in military and that
mail carrier was responsible for her welfare not sufficient to meet required statutory
burden); Johnstone v. State, 961 S.W.2d 385, 387-88 (Tex. App.—Houston [1st Dist.]
1997, no writ) (holding evidence of patient’s schizophrenia, auditory hallucinations,
paranoia, irritability, and refusal to take medication not sufficient to meet required
statutory burden).



          Here, in addition to Dr. Scarano’s diagnosis of appellant’s mental illness, the
State offered Dr. Scarano’s expert opinion that “without treatment, [appellant] would
again be in a serious psychotic state and would be a danger to himself and others.” 
Dr. Scarano further testified that it was his opinion that appellant was “continuing to
suffer from a significant psychotic disorder, delusional disorder—is a psychotic type
of disorder.” Dr. Scarano explained that he came to this conclusion from reading the
medical records from Vernon State Hospital and from his own evaluation of
appellant.


 Dr. Scarano testified that appellant still believes he owns large amounts
of property in Galveston and in other places. He still has some thoughts that he has
a royal heritage and that “he still has some thoughts of—some paranoid thoughts
where people are against him or trying to take advantage of him.” Dr. Scarano was
concerned that, because appellant did not recognize he had a mental disorder,
appellant would most likely stop taking his medications “which would cause him to
deteriorate fairly seriously.” Dr. Scarano believed that appellant was a danger to
himself and others because, due to his delusions of grandiosity, appellant “can very
easily go on to a piece of property that somebody else owns and tell them that this is
my piece of property and an argument ensue. . . .”
          Dr. Scarano’s testimony tracked the language of section 574.035 and
summarized his report as well as Dr. Black’s report. However, as in the cases cited
above, the behavior relied on by Dr. Scarano as the factual bases for his opinion
regarding appellant’s inability to function independently constituted nothing more
than evidence of appellant’s mental illness and did not amount to evidence tending
to confirm that appellant was experiencing substantial mental or physical
deterioration. Dr. Scarano explained that, because appellant is confined in an
institutional setting, his food, clothing, and shelter are provided for him; therefore,
you would not expect to see any deterioration in those areas. Without looking at
specific overt acts, however, Dr. Scarano testified that a psychiatrist can predict what
would happen if appellant is removed from the institution. 
          When Dr. Scarano examined appellant before the first commitment hearing,
appellant was “acutely psychotic” and believed he was “King Elvin.” Comparing the
recent evaluation with the one he conducted six months earlier, Dr. Scarano testified
that appellant had shown “moderate improvement.” 
          Based on our review of the evidence presented at the commitment proceeding,
we hold that the jury could not have properly found that the State met its burden to
prove, by clear and convincing evidence, the required elements of subsection
574.035(a) because there was no evidence of a recent overt act or continuing pattern
of behavior tending to confirm the likelihood of serious harm to appellant or others
or appellant’s distress and the deterioration of appellant’s ability to function. See
Tex. Health & Safety Code Ann. § 574.035(e).
          We sustain appellant’s first point of error. Because of our disposition of
appellant’s first point of error, we need not consider the factual sufficiency challenge
presented in his second point of error.
Written Application
          In point of error three, appellant argues that the State should have been
required to file a written application for court-ordered mental health services.
          At a pretrial hearing, appellant’s counsel objected to the State’s failure to file
a written application for court-ordered mental health services. Appellant cites no
authority for his proposition that failing to file a written application is error. 
          Article 46.02 of the Code of Criminal Procedure, entitled “Incompetency to
Stand Trial,” does not require a written application for court-ordered mental health
services. Tex. Code Crim. Proc. Ann. art. 46.02 § 6 (d)(1) (Vernon Supp. 2003). 
Furthermore, article 46.02 waives the notice requirements of the Health and Safety
Code. Tex. Code Crim. Proc. Ann. art. 46.02 § 6 (d)(1), (2) (Vernon Supp. 2003). 
          We overrule point of error three.
 
 
 
Conclusion
          We reverse the orders of the trial court, and we render judgment denying the
State’s applications to commit appellant for court-ordered extended mental health
services.

                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Hanks.