NO. 12-04-00186-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS
THE STATE OF TEXAS                                   §                 APPEAL FROM THE 

 
FOR THE BEST INTEREST                            §                 COUNTY COURT AT LAW

 
AND PROTECTION OF N.D.                          §                 CHEROKEE COUNTY, TEXAS
                                                                                                                                                            
MEMORANDUM OPINION
            Appellant N.D. appeals from an order of commitment for temporary inpatient mental health
services and an order to administer psychoactive medication. After a hearing without a jury, the trial
court ordered N.D. committed to Rusk State Hospital for a period not to exceed ninety days and
entered an order authorizing the Texas Department of Mental Health and Mental Retardation to
administer psychoactive medication to N.D. In two issues, N.D. asserts the evidence is legally and
factually insufficient to support the order of commitment and the trial court erred in granting the
State’s application for administration of psychoactive medication. We reverse and render.
 
Background
            On June 1, 2004, an application for court-ordered temporary mental health services was filed
requesting the court commit N.D. to Rusk State Hospital for a period not to exceed ninety days. The
application was supported by a certificate of medical examination for mental illness, prepared by a
physician, Dr. C. Cuellar, who had examined N.D. on May 30. Dr. Cuellar diagnosed N.D. as
suffering from dementia. He found that N.D. is mentally ill, likely to cause serious harm to others,
and is suffering severe and abnormal mental, emotional, or physical distress, is experiencing
substantial mental or physical deterioration of her ability to function independently, and is unable
to make a rational and informed decision as to whether to submit to treatment. 
            Dr. Cuellar reached these conclusions because, on May 30, N.D. “[r]ambled on and on
illogically.” N.D. had been neglecting her nourishment and personal hygiene and had been
noncompliant with her medications. Also on that date, N.D. threatened to stab her husband. Based
on the same facts, Dr. Cuellar found that N.D. presents a substantial risk of serious harm to herself
or others if not immediately restrained, an opinion he based on N.D.’s behavior and on evidence of
severe emotional distress and deterioration in her mental condition to the extent she cannot remain
at liberty. 
            On June 1, 2004, N.D. was examined by Dr. Douglas N. Johnson who then also prepared a
certificate of medical examination for mental illness. Dr. Johnson diagnosed N.D. with
schizoaffective disorder, bipolar type, and indicated that N.D. is mentally ill. He came to this
conclusion because N.D. said that she wanted to kill her husband, that she is thirty-five years old,
and that the date was January 11, 2003. Also, on May 30, 2004, she threatened to kill her husband
with a butcher knife. 
            Dr. Johnson testified at the hearing, first restating his diagnosis that N.D. is suffering from
schizoaffective disorder, bipolar type. He agreed with Dr. Cuellar’s determination that she is likely
to cause serious harm to others. He agreed that N.D. is suffering severe and abnormal mental,
emotional, or physical distress, is unable to take care of her daily needs, and is unable to make a
rational informed decision as to whether or not to submit to treatment. He based his opinion on
medical records and his examination of N.D. He explained that, prior to admission to the hospital,
she had an altercation with her husband and threatened to kill him. While at the hospital, she stated
she would like to bring about his demise. While in a confused state, she ran out into the street where
she had to be held to keep from running into traffic. She has shown a great deal of confusion, which
indicates she cannot think rationally, and she has no insight into the fact that she has been ill and
needs to be under treatment. The doctor stated that Rusk State Hospital is the least restrictive
available option for N.D. at this time. 
            On cross-examination, Dr. Johnson testified that he has seen N.D. at least three times since
she has been at the hospital. Her condition has improved to some extent. He stated that, to his
knowledge, she needs no assistance or prompting to dress herself, feed herself, or take care of her
personal hygiene. She has escorted grounds privileges because when she becomes agitated she can
become quite dangerous to other people, although she has not recently exhibited any of that
aggression at the hospital. The doctor explained that she can initiate conversation and sometimes
respond to questions in a rational manner. Sometimes she is quite disorganized. The only allegation
of harm to others is the threat to kill her husband before she was hospitalized. He admitted that it 
was possible that her husband merely made her appear to be the aggressor to avoid criminal liability
for his actions against her. He said while possible, he did not find it probable that N.D. was the
victim, although, in her mind, N.D. might have thought herself the victim, acting in self-defense. 
Dr. Johnson discussed the use of medications with N.D. but did not know how much she understood. 
She did not show good organization of thinking during any conversations he had with her. She has
not consented to take medications so she is not on medication. The doctor estimated that N.D. would
require between two and four weeks of treatment.
            On re-direct, Dr. Johnson clarified that, while at the hospital, N.D. has not continued to
express a desire to see her husband dead. On re-cross, he stated that N.D. said she was afraid of her
husband.
            Upon questioning by the court, Dr. Johnson explained that, when she came to the hospital,
N.D. admitted wanting to “liquidate” her husband. Then she later said he was not her husband. She
was confused and disoriented. In speaking with the doctor, N.D. confirmed that she ran out of the
house into the street. She said she was getting away from her husband who had raised his fist. The
doctor explained that while it might be appropriate for her to run from her husband since he was
raising his fist, it was inappropriate to run into the street. The doctor verified that he had observed
N.D.’s inability to focus, to continue with a conversation on topic, and to understand and
appropriately respond to her environment. Her symptoms are causing her severe distress to a point
that her perception is making her do things like want to kill her husband and then change her mind. 
She might be able to recognize the dangers in ordinary life, but she might not be able to deal with
those dangers. While she can feed herself if food is in front of her, the doctor does not believe she
is capable of dealing rationally with people in society to obtain food. Dr. Johnson was uncertain
whether N.D. could recognize the dangers associated with cooking and the possibility of starting a
fire. She could not do so as consistently as a person without her illness could.
            On further cross-examination, Dr. Johnson explained that the only indication he had that
N.D. was unable to order food was her disorganization in talking to him. The doctor stated that it
would be reasonable for N.D. to consider her husband’s action of raising his fist in an aggressive
manner as an attempt to make her fear that he might hurt her. He acknowledged that it did not
require a psychiatric illness for somebody to say she wanted to see the person who hurt her get hurt. 
N.D. has made no attempt to harm herself or others while in the hospital. When she came to the
hospital, N.D. said she wanted to cause his demise, but later calmed down and no longer wanted to
hurt him. The doctor stated that he believes N.D.’s condition is severe. Eliminating the information
provided by her husband, and considering her disorganized thinking, N.D. could function with
someone else to help take care of her, but it would not necessarily have to be in the hospital. 
However, in answer to the court’s question, the doctor stated that there are no other appropriate
facilities available for N.D. with her history.
            The trial court entered an order for temporary inpatient mental health services after
determining that the evidence supports the allegations that N.D. is mentally ill and that she is
suffering severe and abnormal mental, emotional, or physical distress; experiencing substantial
mental or physical deterioration of her ability to function independently, which is exhibited by her
inability to provide for her basic needs; and is unable to make a rational and informed decision as
to whether or not to submit to treatment. The court ordered N.D. committed to Rusk State Hospital
for a period not to exceed ninety days. A separate hearing was then held on the State’s application
for order to administer psychoactive medication. At the close of evidence, the court entered an order
to administer psychoactive medication for the period of temporary commitment.
 
Sufficiency of the Evidence
            In her first issue, N.D. asserts the evidence is neither legally nor factually sufficient to support
the order of commitment. She contends that the State did not prove the statutory requirements by
clear and convincing evidence. She argues that the evidence does not show an overt act or
continuing pattern of behavior tending to confirm her distress and deterioration of her ability to
function. She claims her actions were reasonable in light of the circumstances. She argues that she
ran into the street out of fear of her husband. Further, she contends, the State did not produce
evidence showing she could not take care of herself, practice proper hygiene, provide food for
herself, or make a rational and informed decision as to whether to submit to treatment.
            In a legal sufficiency review where the burden of proof is clear and convincing evidence, the
reviewing court must consider all of the evidence in the light most favorable to the finding to
determine whether a reasonable trier of fact could have formed a firm belief or conviction that its
finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume
that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do
so. Id. A court should disregard all evidence that a reasonable factfinder could have disbelieved or
found to have been incredible. Id. 
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness he is likely to cause serious harm
to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental,
emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his 
ability to function independently, which is exhibited by his inability, except for reasons of indigence,
to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make
a rational and informed decision as to whether or not to submit to treatment. Tex. Health &
Safety Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute, the
evidence must include expert testimony and, unless waived, evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others or the proposed patient’s distress and the deterioration of his ability to
function. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003). 
            The State provided expert testimony explaining that N.D. is mentally ill and describing her
behavior and statements. Dr. Cuellar stated in his certificate of medical examination that, on
May 30, N.D. had threatened to stab her husband. Dr. Johnson testified that N.D. had threatened to
kill her husband with a butcher knife. This is expert testimony of an overt act, a threat to kill. 
However, the trial court did not find that N.D. is likely to cause serious harm to others and this threat
does not tend to confirm N.D.’s distress, the deterioration of her ability to function, or her ability to
make a rational and informed decision as to whether to submit to treatment.
            Neither does the evidence show a continuing pattern of behavior tending to confirm N.D.’s
distress, the deterioration of her ability to function, or her ability to make a decision as to whether
to submit to treatment. The doctors described N.D. as rambling, confused, unfocused, irrational,
disoriented, and lacking insight into her condition. They said she neglected her nourishment and
personal hygiene and did not take her medication. Without giving specific examples, Dr. Johnson
stated that she did not show good organization of thinking and is unable to understand and
appropriately respond to her environment. Generally, she might not be able to deal with the ordinary
dangers of life. Further, based on her disorganization, he said N.D. is not capable of dealing
rationally with people to obtain food. The doctor described her condition as severe. 
            The doctors’ statements are conclusory and merely mirror the requirements of the statute. 
The factual bases for the doctors’ opinions are lacking. See K.T. v. State, 68 S.W.3d 887, 893 (Tex.
App.–Houston [1st Dist.] 2002, no pet.). The description of N.D.’s behavior reflects her mental
illness and need for hospitalization, but are insufficient to meet the State’s burden to establish one
of the additional criteria by clear and convincing evidence. See id. Further, Dr. Johnson admitted
that, since being at the hospital, N.D.’s condition had improved, and she needed no assistance or
prompting to dress or feed herself or take care of her personal hygiene. Dr. Johnson also stated that
he did not know how much she understood about the use of medications and had not consented to
take any. This is not evidence that she cannot make a rational and informed decision as to whether
to submit to treatment. 
            We conclude there is no evidence of a recent overt act or continuing pattern of behavior that
tends to confirm N.D.’s distress, deterioration of her ability to function, and her inability to make
a rational and informed decision as to whether to submit to treatment. The evidence presented does
not satisfy the statutory requirement for clear and convincing evidence in support of the order for
temporary inpatient mental health services. See Tex. Health & Safety Code Ann. § 574.034(d). 
The evidence is legally insufficient to support the trial court’s order. See In re J.F.C., 96 S.W.3d
at 266. We sustain N.D.’s first issue to the extent she complains of the legal sufficiency of the
evidence. We need not reach her factual sufficiency complaint. See Tex. R. App. P. 47.1.
 
Psychoactive Medication
            In her second issue, N.D. asserts the trial court erred in entering an order authorizing
administration of psychoactive medication. She argues that such an order must be based on a valid
order for inpatient mental health care and, due to the reasons asserted in her first issue, the trial
court’s order for inpatient mental health care is not valid. 
            The court may enter an order authorizing the administration of psychoactive medication if
it finds by clear and convincing evidence that the patient is under an order for temporary or extended
mental health services, the patient lacks the capacity to make a decision regarding the administration
of the proposed medication, and treatment with the proposed medication is in the best interest of the
patient. Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003).
            Having found the evidence legally insufficient to support the trial court’s order of
commitment, we have determined that the trial court’s order for temporary mental commitment is
invalid. Therefore, the order authorizing administration of psychoactive medication is also invalid. 
See Tex. Health & Safety Code Ann. § 574.106(a). We sustain N.D.’s second issue.

Conclusion
            The evidence is legally insufficient to support the trial court’s order of commitment for
temporary inpatient mental health services. It follows that the order for administration of
psychoactive medication is invalid.
            We reverse the trial court’s orders of commitment for temporary inpatient mental health
services and for administration of psychoactive medication. We render judgment denying the State’s
applications for court-ordered temporary mental health services and for order to administer
psychoactive medication.

                                                                                                    SAM GRIFFITH 
                                                                                                               Justice

Opinion delivered December 22, 2004.
Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.


(PUBLISH)