NO.
12-05-00322-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

                                                                        

 

§          APPEAL
FROM THE 

THE STATE OF TEXAS FOR
THE

BEST INTEREST AND
PROTECTION    §          COUNTY COURT AT LAW OF

OF J.W.

§          CHEROKEE
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION








            Appellant
J.W. appeals from an order of commitment for temporary inpatient mental health
services and an order to administer psychoactive medication.  After a hearing without a jury, the trial
court ordered J.W. committed to Rusk State Hospital for a period not to exceed
ninety days and entered an order authorizing the Texas Department of Mental
Health and Mental Retardation to administer psychoactive medication to
J.W.  In two issues, J.W. asserts the
evidence is legally and factually insufficient to support the order of
commitment and the trial court erred in granting the State’s application to
administer psychoactive medication.  We
reverse and render.

 

Background








            On
September 19, 2005, an application for court ordered temporary mental health
services was filed requesting the court commit J.W. to Rusk State Hospital for
a period not to exceed ninety days.  The
application was supported by a certificate of medical examination for mental
illness, prepared by a physician, Dr. C. Cuellar, who had examined J.W. on
September 16.  Dr. Cuellar diagnosed J.W.
as suffering from schizoaffective disorder. 
He found that J.W. is mentally ill, likely to cause serious harm to
himself, and is suffering severe and abnormal mental, emotional, or physical
distress, is experiencing substantial mental or physical deterioration of his
ability to function independently, and is unable to make a rational and
informed decision as to whether to submit to treatment.  

            Dr.
Cuellar reached these conclusions because, on September 16, J.W. exhibited
illogical, garrulous speech and, on September 15, he was actively
hallucinating.  Dr. Cuellar found that
J.W. presents a substantial risk of serious harm to himself or others if not
immediately restrained, an opinion he based on J.W.’s behavior and on evidence
of severe emotional distress and deterioration in J.W.’s mental condition to
the extent he cannot remain at liberty. 
Dr. Cuellar formed this opinion because of J.W.’s pressured speech, the
fact that he was out of touch with reality, and his actions of September 15.

            On
September 21, 2005, J.W. was examined by Dr. Larry Hawkins who then also
prepared a certificate of medical examination for mental illness.  Dr. Hawkins diagnosed J.W. with bipolar
disorder I, manic, severe with psychotic features and indicated that J.W. is
mentally ill and likely to cause serious harm to others.  He further determined that he is suffering
severe and abnormal mental, emotional, or physical distress, is experiencing substantial
mental or physical deterioration of his ability to function independently,
which is exhibited by his inability to provide for his basic needs, and he is
unable to make a rational and informed decision as to whether or not to submit
to treatment.  He came to these
conclusions because J.W. exhibited very pressured speech, flight of ideas,
disorganized thoughts, and paranoia. 
J.W. believed others had placed chemicals in his body. 

            Dr.
Hawkins testified at the hearing, explaining that he diagnosed J.W. with
bipolar disorder I, manic, severe with psychotic features.  He testified that J.W. is likely to cause
serious harm to others.  He explained
that J.W. has very disorganized thought processes and very fragmented thoughts
making it difficult for him to communicate his needs to others.  It takes an extended period of time for the
listener to get some understanding of what J.W. is trying to say.  Therefore, he is not able to function in the
community in a reasonable fashion to get his needs met.  Dr. Hawkins determined that J.W. is suffering
severe and abnormal mental, emotional, or physical distress and is unable to
take care of his daily needs.  He
explained that J.W. demonstrated very agitated behavior.  He became very angry and irritable when
hospital personnel tried to discuss these issues with him.  The doctor explained that has happened
several times leading him to believe “that there’s some impending intimidation,
kind of aggressive features to his verbalization.”  Further, J.W. believes that when he allowed
other patients to stay in his home, they brought in illicit drugs that somehow
caused him to be chemically poisoned. 
Dr. Hawkins testified that trying to get a complete, understandable,
cohesive, coherent story from J.W. is next to impossible.  J.W. talks about four different topics, all
in fragmented phrases, that he tries to weave together.  J.W. is very fragmented, unable to carry on a
rational conversation, and very easily agitated over the fact that he cannot be
understood by others.  The doctor
testified that this could lead to harm to J.W., harm to others, or
deterioration.  Because of the way he
acts toward others, it “looks as though he may go off,” and he could be harmed
in that kind of situation.  J.W.’s
posture toward others could evoke a physical reaction.  Dr. Hawkins based his diagnosis on personal
examinations, reviews of medical histories, and reasonable medical
probabilities.  He estimated that, once
J.W. is on medications, he would need to remain in the hospital for two to three
weeks.  The doctor stated that Rusk State
Hospital is the least restrictive available option for J.W. at this time.  

            On
cross examination, Dr. Hawkins testified that J.W. has not assaulted anyone at
the hospital or shown an intent to harm himself.  J.W. has the capacity to feed himself and, after
prompting, can take care of his own personal hygiene.  J.W. might understand the inherent dangers of
sitting in a fire ant bed, but there are some inherent dangers in the community
that he might not understand.  The doctor
was uncertain whether J.W. could effectively communicate to seek medical
attention if needed.  Due to his
disorganized thought and speech patterns, it would be almost impossible for him
to get his point across to people in the community to get his needs met in a
reasonable time period.  This difficulty
in communication could lead to frustration and aggravation on the part of J.W.
and those with whom he speaks.

            On
redirect, the doctor explained that, while hospital personnel are often able to
avoid assaultive behavior, in the community it would be easier to provoke
assaultive responses.  Therefore, J.W. is
better off in a structured situation such as Rusk State Hospital.

            On
further cross examination, Dr. Hawkins stated that, while J.W. had previously
had difficulty in the community, he had not been assaulted.  Upon questioning by the court, the doctor
clarified the connection between J.W.’s disorganized thought and speech
patterns and his anger, irritability, and disruption.  Even after listening to J.W. for thirty or
forty-five minutes, the listener still has to piece his story together, and
J.W. gets very angry if the listener interrupts for clarification.  A lot of anger and frustration builds into
the process, caused by the mental illness. 
The doctor testified that this is a continuing pattern of behavior that
has been going on for over six months. 
Because J.W. cannot get answers and no one seems to understand, it
causes J.W. severe distress.  J.W.’s
condition will deteriorate if not treated. 

            J.W.
testified in his own behalf.  He denied
wanting to hurt himself or anyone else. 
He receives social security checks and takes care of himself outside of
the hospital.  He knows how to avail
himself of the public bus system and has obtained medical services when
needed.  He does his own cooking,
cleaning, and shopping.  He knows not to
sit on a fire ant mound and what to do if his house were burning.  If released, he has a place to live.  He denied ever trying to rob anyone.  He shops at the cheapest places because he
has a limited income. 

            On
cross examination, J.W. said he had an apartment to go to if released from the
hospital.  He explained that he has a
roommate and the apartment is affordable on his social security income.  He testified that he never hurt anyone.  He explained that some people at the
apartment complex tried to teach him a lesson that was not funny although they
thought it was.

 
          The trial court entered
an order for temporary inpatient mental health services after determining that
the evidence supports the allegations that J.W. is mentally ill and that he is
suffering severe and abnormal mental, emotional, or physical distress;
experiencing substantial mental or physical deterioration of his ability to
function independently, which is exhibited by his inability to provide for his
basic needs; and he is unable to make a rational and informed decision as to
whether or not to submit to treatment. 
The court ordered J.W. committed to Rusk State Hospital for a period not
to exceed ninety days.  

            A
separate hearing was then held on the State’s application for court ordered
administration of psychoactive medication. 
Dr. Hawkins testified as to J.W.’s need for medication and J.W.’s
refusal to take it.  J.W. testified,
explaining that while he did not object to the use of medication, he did not
see the purpose of it.  At the close of
evidence, the court entered an order to administer psychoactive medication for
the period of temporary commitment.

Commitment
Order








            In
his first issue, J.W. asserts the evidence is neither legally nor factually
sufficient to support the order of commitment. 
He contends that the evidence merely shows that he may be mentally
ill.  He argues that the evidence does
not show an overt act or continuing pattern of behavior tending to confirm that
he is suffering severe and abnormal mental, emotional, or physical distress,
experiencing substantial mental or physical deterioration of his ability to
function independently as exhibited by an inability to provide for his basic
needs, or that he is unable to make a rational and informed decision as to
whether or not to submit to treatment. 
Thus, he argues, the State failed to meet its evidentiary burden under
the statute. 

Applicable Law

            In
a legal sufficiency review where the burden of proof is clear and convincing
evidence, the reviewing court must consider all of the evidence in the light
most favorable to the finding to determine whether a reasonable trier of fact
could have formed a firm belief or conviction that its finding was true.  In re J.F.C., 96 S.W.3d 256,
266 (Tex. 2002).  The reviewing court
must assume that the factfinder resolved disputed facts in favor of its finding
if a reasonable factfinder could do so.  Id.  A court should disregard all evidence that a
reasonable factfinder could have disbelieved or found to have been
incredible.  Id. 

            The
trial judge may order a proposed patient to receive court ordered temporary
inpatient mental health services if the judge or jury finds, from clear and
convincing evidence, that the proposed patient is mentally ill and, as a result
of the mental illness he is likely to cause serious harm to himself, is likely
to cause serious harm to others, or is (i) suffering severe and abnormal
mental, emotional, or physical distress, (ii) experiencing substantial mental
or physical deterioration of his  ability
to function independently, which is exhibited by his inability, except for
reasons of indigence, to provide for his basic needs, including food, clothing,
health, or safety, and (iii) unable to make a rational and informed decision as
to whether or not to submit to treatment. 
Tex. Health & Safety Code Ann.
§ 574.034(a) (Vernon 2003).  To be clear
and convincing under the statute, the evidence must include expert testimony
and, unless waived, evidence of a recent overt act or a continuing pattern of
behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others, or the proposed patient’s distress and the
deterioration of his ability to function. 
Tex. Health & Safety Code Ann.
§ 574.034(d) (Vernon 2003).

 

Discussion 


            The
State provided expert testimony explaining that J.W. is mentally ill and
describing his behavior.  Dr. Cuellar
stated in his certificate of medical examination that J.W. exhibited illogical,
garrulous, pressured speech, was hallucinating, and was out of touch with
reality.  Dr. Hawkins stated in his
certificate that J.W. exhibited pressured speech, flight of ideas, disorganized
thoughts, and paranoia.  Dr. Hawkins
testified that J.W. has difficulty communicating his needs to others.  J.W. gets angry and irritable when speaking
to hospital personnel.  The doctor’s
testimony focused on J.W.’s manner of communication and the possible problems
that may stem from conversations he might have with people in the
community.  These conversations lead to
frustration and aggravation and cause J.W. severe distress.  This is expert testimony of a continuing
pattern of behavior, difficulty in communicating that results in frustration
and anger. 

            However,
there is no expert testimony that this pattern of behavior tends to confirm the
likelihood of the deterioration of J.W.’s ability to function.  There is only Dr. Hawkins’s bare assertion
that J.W. is unable to function in the community in a reasonable fashion to get
his needs met.  The doctors’ statements
are conclusory and the factual bases for their opinions are lacking.  See K.T. v. State, 68 S.W.3d
887, 893 (Tex. App.–Houston [1st Dist.] 2002, no pet.).  Moreover, Dr. Hawkins testified that J.W. can
feed himself and take care of his personal hygiene.  The fact that J.W. has communication problems
does not support a finding that he is experiencing substantial mental or
physical deterioration of his ability to function independently.  Further, much of the doctor’s testimony
focused on the possibility that J.W. might aggravate someone he spoke to,
eliciting a physical response.  However,
as the trial court did not find that J.W. is likely to cause harm to himself or
others, this evidence does not support the order of commitment.








            We
conclude there is no evidence of a recent overt act or continuing pattern of
behavior that tends to confirm the deterioration of J.W.’s ability to function
independently.  The evidence presented
does not satisfy the statutory requirement for clear and convincing evidence in
support of the order for temporary inpatient mental health services.  See Tex.
Health & Safety Code Ann. § 574.034(d).  The evidence is not legally sufficient to
support the trial court’s order.  See In
re J.F.C., 96 S.W.3d at 266.  We
sustain J.W.’s first issue to the extent he complains of the legal sufficiency
of the evidence.  We need not reach his
factual sufficiency complaint.  See
Tex. R. App. P. 47.1.

Psychoactive Medication

            In
his second issue, J.W. asserts the trial court erred in entering an order
authorizing administration of psychoactive medication.  He argues that such an order must be based on
a valid order for inpatient mental health care and, due to the reasons asserted
in his first issue, the trial court’s order for inpatient mental health care is
not valid.    

            The
court may enter an order authorizing the administration of psychoactive
medication if it finds by clear and convincing evidence that the patient is
under an order for temporary or extended mental health services, the patient
lacks the capacity to make a decision regarding the administration of the
proposed medication, and treatment with the proposed medication is in the best
interest of the patient.  Tex. Health & Safety Code Ann. §
574.106(a) (Vernon 2003). 

            Having
found the evidence legally insufficient to support the trial court’s order of
commitment, we have determined that the trial court’s order for temporary
mental commitment is invalid.  Therefore,
the order authorizing administration of psychoactive medication is also
invalid.  See Tex. Health  &
Safety Code Ann. § 574.106(a).  We
sustain J.W.’s second issue.

 

Conclusion

            The
evidence is legally insufficient to support the trial court’s order of
commitment for temporary inpatient mental health services.  It follows that the order for administration
of psychoactive medication is invalid.

            We
reverse the trial court’s orders of commitment for temporary inpatient mental
health services and for administration of psychoactive medication.  We render judgment denying the State’s
applications for court ordered temporary mental health services and for an
order to administer psychoactive medication.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

Opinion delivered May 26, 2006.

Panel consisted
of Worthen, C.J., Griffith, J., and DeVasto, J.

 

 

 

(PUBLISH)