Reversed and Rendered and Majority and Dissenting Opinions filed
February 20, 2007








 

Reversed
and Rendered and Majority and
Dissenting Opinions filed February 20, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01273-CV

____________

 

MARLIN DEANDRE HOUSE, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 208th
District Court

Harris County, Texas

Trial Court Cause No. 739,579

 



 

D I S S E N T I N G   O P I N I O N

Because I believe the evidence is legally sufficient to
show recent overt acts or a continuing pattern of behavior that tend to confirm
the likelihood that appellant will be a danger to himself or others, I
respectfully dissent.








In 1996, appellant murdered his
mother by stabbing her more than ninety-three times.  He was found not guilty
by reason of insanity and committed to Vernon State Hospital.  He was
subsequently transferred to Rusk State Hospital, where he has remained since
1999.  Within two weeks of his arrival at Rusk, the staff physicians
recommended that appellant be placed in an outpatient treatment facility.  The
trial court, however, issued an order re-committing appellant to Rusk for the
statutorily mandated period of one year.  Since that time, Rusk physicians have
annually maintained that appellant should be released, but the court has
consistently found appellant continues to meet the criteria for inpatient
commitment.

In reviewing the legal sufficiency of
the evidence to support a mental health re-commitment, we must review the
evidence favorable to the court=s judgment to see if there is more than a scintilla to
support the judgment.  See K.T. v. State, 68 S.W.3d 887, 889B90 (Tex. App.CHouston [1st Dist.] 2002, no pet.). 
We consider only the evidence and inferences tending to support the fact
finding, and disregard all contrary evidence and inferences.  Id.  If
there is more than a scintilla of evidence to support the finding, then the
legal sufficiency challenge fails.  In re K.C.M., 4 S.W.3d 392, 395
(Tex. App.CHouston [1st Dist.] 1999, pet. denied).








Dr. Milton Altschuler examined
appellant and filed a report in which he concluded appellant continued to be a
danger to himself or others if released into a less restrictive environment. 
Dr. Altschuler noted that the stress and disappointment of returning to Rusk on
October 7, 2004 caused appellant to decompensate.[1] 
Dr. Altschuler reviewed appellant=s medical records and noted that
there were indications that appellant=s paranoid ideation continued
throughout the year.  The nursing assessment dated October 7, 2004 noted that
appellant had suffered deterioration in self-care, homicidal threats,
aggression, and decompensation.  Appellant contends the nurse=s notes from October 7, 2004 appear
to be a Ahistory entry,@ which appellant defines as an entry
that Acan be referring to something that
happened at or even before his hospitalization.@  At trial, Dr. Altschuler agreed
that the notes Alook[ed] like a history entry.@  However, the record is unclear
whether the nurse was recording past behavior or current symptoms.  The
notation in the nurse=s assessment is titled: APresenting Problems/Behavior.@  The court could have inferred from
the notes and Dr. Altschuler=s testimony that appellant exhibited those symptoms on the
day he was re-admitted to the hospital.  

Even if the court determined the
nurse=s assessment reflected past behavior,
appellant=s lack of insight into his illness and the continued state of denial that
his illness caused him to commit a crime shows a continuing pattern of
behavior, which tends to confirm the trial court=s finding.  Most concerning to Dr.
Altschuler was appellant=s lack of insight into his illness and the fact that
appellant has not been able to appreciate the consequences of his acute
psychotic episode in 1996 that resulted in the murder of his mother.  At the
hearing before the trial court, Dr. Altschuler testified that appellant=s lack of insight could lead to the
likelihood of serious harm to himself or others if appellant was placed in an
outpatient setting.  Because appellant has not taken responsibility for the
murder of his mother and does not fully understand his illness, there is a
substantial likelihood that appellant would leave an outpatient facility and
stop his medication.  Both Dr. Altschuler, and Dr. Abdulla, the Harris County
physician, testified that appellant could only function as an outpatient if he
continued to take his medication.








In Campbell v. State, No.
14-99-00620-CV, 2000 WL 675142 (Tex. App.CHouston [14th
Dist.] May 25, 2000, pet. denied) (not designated for publication), this court determined that evidence
of Campbell=s vicious crime, his continued state of denial, and the complete lack of
treatment were factors sufficient to demonstrate a continued pattern of
behavior under section 574.035(e) of the Texas Health and Safety Code. 
Similarly, in this case, appellant committed a vicious crime and demonstrated a
continued pattern of denial that his illness caused him to commit that crime. 
The majority opinion attempts to distinguish Campbell on the grounds
that Campbell did not receive treatment for his illness and the physicians at
Rusk agreed that Campbell was in a state of denial.  I disagree.  The record
reflects in this case that appellant received treatment for his illness in the
form of medication.  The treatment factor, however, does not bear directly on
appellant=s continued pattern of behavior.  With regard to appellant=s lack of insight into his illness,
although the Rusk physicians recommended release, Dr. Srinivasan noted in
appellant=s October 7, 2004 medical records that, APatient readily admits guilt but
denies responsibility.@  Further, in a psychiatric evaluation on the same date, Dr.
Srinivasan noted that one of appellant=s weaknesses was that he lacked
insight.  

Although appellant can articulate
that he has paranoid schizophrenia and needs to take medicine, he does not take
responsibility for his mother=s death.  A notation in appellant=s medical records on January 29, 2005
reflected that he continued to have delusional and paranoid thoughts.  Dr.
Altschuler testified that appellant Aalso had suicidal ideation, that he
had been making plans, but did not want to talk about medications.  He also
denied to the individual who had written the progress note that he was not
paranoid, did not recognize that he was delusional.@  I find this evidence legally
sufficient to support the trial court=s finding of a continued pattern of
behavior or an overt act.

In holding the evidence legally
insufficient, the majority relies on Whitaker v. State, No.
01-03-00576-CV, 2003 WL 22413511 (Tex. App.CHouston [1st
Dist.] Oct. 23, 2003, no pet.) (mem. op.).  In Whitaker, the appellant was found incompetent to
stand trial for the alleged offenses of assault and criminal mischief.  Id. at
*1.  The psychiatrist
in that case testified that he was concerned because Whitaker did not recognize
he had a mental illness and that he would stop taking his medicine, causing him
to deteriorate.  Id. at *3.  He also opined that Whitaker was a
danger to himself and others because due to his delusions, he could easily go
on someone=s property, say he owns it, and become involved in an
argument.   Id.  The
court of appeals found that the evidence only supported the conclusion that
Whitaker was mentally ill but was legally insufficient to show a recent overt
act or continuing pattern of behavior tending to confirm the likelihood of
serious harm to Whitaker or others.  Id.








This case is distinguishable from Whitaker. 
In this case, appellant murdered his mother by stabbing her more than
ninety-three times, but he refuses to take responsibility for her murder.  In
the year preceding the re-commitment hearing, appellant suffered decompensation
and suicidal ideation.  Evidence at the hearing reflected that because
appellant was in a continued state of denial that his illness caused him to
murder his mother, he would be unlikely to take medication in an outpatient
facility.

The evidence presented at the hearing
goes beyond mere evidence of appellant=s denial of his mental illness. 
Appellant exhibited a continuing pattern of denial that his illness caused him
to commit a brutal crime in addition to exhibiting decompensation and suicidal
ideation.  ATexas law does not require relatives or physicians of the mentally ill
(or the courts) to stand idly by until serious harm occurs.@  G.H. v. State, 94 S.W.3d
115, 117 (Tex. App.CHouston [14th Dist.] 2002, no pet.).  Because I believe this evidence
is legally sufficient to show recent overt acts and/or a continuing pattern of
behavior that tended to confirm the trial court=s finding that appellant was a danger
to himself or others, I respectfully dissent.

 

 

 

/s/        Leslie Brock
Yates

Justice

 

 

 

 

Judgment rendered and Majority and
Dissenting Opinions filed February 20, 2007.

Panel consists of Chief Justice
Hedges and Justices Yates and Seymore (Seymore, J., majority).    

Publish C Tex.
R. App. P. 47.2(b).

 









[1]  Dr. Altschuler defined Adecompensation@ as
a regression into severe symptomology.