NO. 12-04-00220-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


§APPEAL FROM THE 

THE STATE OF TEXAS FOR THE 
BEST INTEREST AND                                     §     COUNTY COURT AT LAW OF
PROTECTION OF T.A.

§CHEROKEE COUNTY, TEXAS





MEMORANDUM OPINION
            Appellant T.A. appeals from an order of commitment for temporary inpatient mental health
services and an order to administer psychoactive medication. After a hearing without a jury, the trial
court ordered T.A. committed to Rusk State Hospital for a period not to exceed ninety days and
entered an order authorizing the Texas Department of Mental Health and Mental Retardation to
administer psychoactive medication to T.A. In two issues, T.A. asserts the evidence is legally and
factually insufficient to support these orders. We reverse and render.

Background
            On June 22, 2004, the State filed an application for court-ordered temporary mental health
services requesting that the trial court commit T.A. to Rusk State Hospital for a period not to exceed
ninety days. The State supported its application with a certificate of medical examination for mental
illness, prepared by Dr. Douglas Johnson. Dr. Johnson examined T.A. on June 14 and diagnosed
her as suffering from schizophrenia, paranoid type. In his physician’s certificate, Dr. Johnson stated
that T.A. (1) is mentally ill, (2) is suffering severe and abnormal mental, emotional, or physical
distress, (3) is experiencing substantial mental or physical deterioration of her ability to function
independently, which is exhibited by her inability, except for reasons of indigence, to provide for her
basic needs, including food, clothing, health, or safety, and (4) is unable to make a rational and
informed decision as to whether or not to submit to treatment. Dr. Johnson reached this conclusion
because T.A. hears people from other cities talking to her “over the static over the airways.” She
claims she hears real people and that her husband’s paramour threatens to kill her if she moves to
Freeport. T.A. makes decisions based on what the voices tell her and makes frequent changes of
plans based on these delusions.
            On June 27, Dr. C. Cuellar examined T.A and diagnosed her with dementia and
schizophrenia, paranoid type. The doctor found that T.A. is mentally ill and is likely to cause serious
harm to herself. Dr. Cuellar concluded that T.A. presents a substantial risk of serious harm to herself
or others, demonstrated by her behavior and by the evidence of severe emotional distress and
deterioration in her mental condition to the extent that she cannot remain at liberty. Dr. Cuellar
noted that T.A. “blabbered incomprehensibly” and was unable to take care of her basic needs. 
Additionally, the doctor believes that T.A.’s condition is chronic, evidenced by very little
improvement in seven months. He expects her condition to continue for more than ninety days. 
            At a hearing on June 29, Dr. Johnson testified, first restating his diagnosis that T.A. is
suffering from schizophrenia, paranoid type, severe and abnormal mental, emotional, or physical
distress, and is incapable of caring for her basic daily needs. Further, T.A. is unable to make a
rational and informed decision as to whether or not to submit to treatment. Dr. Johnson based his
opinion on his examination of T.A. He explained that T.A. believes in “thought broadcasting and
thought insertion.” She believes that she communicates with persons in other cities “over the static,
over the airways.” T.A. believes she is communicating with real people and will frequently change
her mind based on what she hears from these voices. During discharge staffing meetings, T.A.
would arrive and say that she could not go through with the plans for discharge because of
information she received “over the airways.” She believes that people are threatening her. Because
T.A. is unable to live independently in the community based on her mental illness, Dr. Johnson
asserted that Rusk State Hospital is the least restrictive option available for T.A. 
            On cross-examination, Dr. Johnson stated that the only improvement in T.A.’s condition
since being at Rusk State Hospital is that she gets less agitated than she has in the past. If someone
provides food for her, T.A. is able to feed herself. She would be capable of going to a restaurant and
ordering and paying for food, provided that she had money. However, Dr. Johnson believed that her
condition would prevent her from going out and obtaining nutritious food. She has the ability to
dress herself, take care of her personal hygiene, initiate conversation, and respond to questions. Dr.
Johnson was not confident that T.A. could handle a checking account or understand a lease
agreement. T.A. would know enough to leave a burning building and to seek medical attention for
a broken arm or an upset stomach. However, she would not be able to live safely in freedom with
the help of willing and responsible family members or friends because she does not trust them based
on her delusions. 
            When questioned about T.A.’s medications, Dr. Johnson noted that T.A. is cooperating and
taking her medications currently. However, he requested a court order for medications because T.A.
does not believe she is ill and Dr. Johnson does not believe a person who does not believe she is ill
can give informed consent to take medication. The doctor also asserted in his physician’s certificate
that T.A. would continue to deteriorate if she is not administered the medication.
            T.A. testified at the hearing that she is not, nor has she ever been, delusional. She talked with
her husband about caring for her and “at first he didn’t want me, he just had a – was having a hot
affair with the neighbor lady, and he was not interested in our marriage.” However, after her sister
indicated she was not interested in taking care of her, T.A.’s husband offered to do so. “And that’s
why the change of the attitude.” 
            The trial court entered an order of temporary inpatient mental health services after
determining that the evidence supports the allegations that T.A. is mentally ill, is suffering severe
and abnormal mental, emotional, or physical distress, is experiencing substantial mental or physical
deterioration of her ability to function independently, which is exhibited by her inability, except for
reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety, and
is unable to make a rational and informed decision as to whether or not to submit to treatment. The
trial court ordered T.A. committed to Rusk State Hospital for a period not to exceed ninety days. 
In a separate order signed the same day, the trial court authorized the hospital officials to treat T.A.
with psychoactive medication. This appeal followed.



Sufficiency of the Evidence
            In her first issue, T.A. asserts the evidence is neither legally nor factually sufficient to support
the order of commitment. While she does not challenge the trial court’s finding that she is mentally
ill, T.A. contends that the State did not present evidence of an overt act or a continuing pattern of
behavior to support the commitment.


 Standard of Review
            In a legal sufficiency review where the burden is clear and convincing, the reviewing court
must consider all of the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In
re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume that the factfinder
resolved disputed facts in favor of its finding if a reasonable factfinder could do so. Id. A court
should disregard all evidence that a reasonable factfinder could have disbelieved or found to have
been incredible. Id.
            In addressing a factual sufficiency challenge, we must consider all of the evidence in the
record, both that in support of and contrary to the trial court’s findings. In re C.H., 89 S.W.3d 17,
27-29 (Tex. 2002). This court must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing. Id. at 25. We must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth
of the State’s allegations. Id. We must consider whether disputed evidence is such that a reasonable
trier of fact could not have reconciled that disputed evidence in favor of its finding. In re J.F.C.,
96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. 
In re C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the
witnesses and the weight to be given their testimony. See id. at 27; In re J.J.O.,131 S.W.3d 618,
632 (Tex. App.–Fort Worth 2004, no pet.).
Involuntary Commitment Order
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness, she is likely to cause serious
harm to herself, is likely to cause serious harm to others, or is (1) suffering severe and abnormal
mental, emotional, or physical distress, (2) experiencing substantial mental or physical deterioration
of her ability to function independently, which is exhibited by her inability, except for reasons of
indigence, to provide for her basic needs, including food, clothing, health, or safety, and (3) unable
to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health
& Safety Code Ann. § 574.034(a) (Vernon 2003). 
            To be clear and convincing under the statute, the evidence must include expert testimony
and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to
confirm either the likelihood of serious harm to the proposed patient or others or the proposed
patient’s distress and the deterioration of her ability to function. Tex. Health & Safety Code
Ann. § 574.034(d) (Vernon 2003). The State provided expert testimony from two doctors who
examined T.A. and diagnosed her with schizophrenia, paranoid type. However, expert testimony
confirming mental illness, standing alone, will not support an involuntary commitment. E.g., T.G.
v. State, 7 S.W.3d 248, 252 (Tex. App.–Dallas 1999, no pet.). 
            The State provided evidence that T.A. is mentally ill. The evidence showed that T.A. hears
voices and makes decisions based on these voices, she “blabbered incomprehensibly,” and her
condition is chronic, showing very little improvement in seven months. Dr. Cuellar stated that T.A.
is likely to cause serious harm to herself. However, the court did not find that T.A. is likely to cause
serious harm to herself nor did the State provide any evidence in support of Dr. Cuellar’s opinion.
            Neither doctor provided evidence of an overt act. The State did not offer evidence showing
that T.A. was unable to clothe, feed, or house herself, or was unable to provide for her own health
or safety. To the contrary, Dr. Johnson conceded that T.A. was able to clothe and feed herself
although he expressed concern about her choosing appropriate foods. He stated that she would
know to seek medical attention if needed. He also stated that she was taking her medications as
requested. This evidence fails to establish that T.A. is unable to take care of her basic needs or
make informed decisions regarding her care. While the evidence showing that she makes decisions
based on delusions constitutes evidence that she is mentally ill, it does not provide the continuing
pattern of behavior necessary to support a commitment. See In re C.O., 65 S.W.3d 175, 182 (Tex.
App.–Tyler 2001, no pet.). 
            We conclude that there is no evidence of an overt act or continuing pattern of behavior
tending to confirm a substantial deterioration of T.A.’s ability to function independently to provide
for her basic needs. See Tex. Health & Safety Code Ann. § 574.034(d); compare, e.g., Mezick
v. State, 920 S.W.2d 427, 430 (Tex. App.–Houston [1st Dist.] 1996, no writ) (patient with ongoing
pattern of manic and depressive behaviors had completely stopped eating, lost thirty pounds,
“steadfastly” refused all medications, and threatened suicide). The doctors’ statements are
conclusory and merely mirror the requirements of the statute. The factual bases for the doctors’
opinions are lacking. See K.T. v. State, 68 S.W.3d 887, 893 (Tex. App.–Houston [1st Dist.] 2002,
no pet.). The description of T.A.’s behavior reflects her mental illness, but is insufficient to meet
the State’s burden to establish one of the additional criteria by clear and convincing evidence. See
id. Considering all the evidence in the light most favorable to the trial court’s finding, we conclude
a reasonable trier of fact could not have formed a belief or conviction that this finding was true. 
See In re J.F.C., 96 S.W.3d at 266. The evidence is not legally sufficient to support the trial court’s
order. See id. We sustain T.A.’s first issue to the extent it relates to legal sufficiency of the
evidence to support the order of commitment. Therefore, we need not reach her factual sufficiency
complaint. See Tex. R. App. P. 47.1.
Psychoactive Medication
            In her second issue, T.A. asserts the evidence is legally and factually insufficient to support
the order authorizing administration of psychoactive medication. She argues that such an order
must be based on a valid order for inpatient mental health care and, due to the reasons asserted in
her first issue, the trial court’s order for inpatient mental health care is not valid.
            The court may enter an order authorizing the administration of psychoactive medication if
it finds by clear and convincing evidence that the patient is under an order for temporary or
extended mental health services, the patient lacks the capacity to make a decision regarding the
administration of the proposed medication, and treatment with the proposed medication is in the
best interest of the patient. Tex. Health & Safety Code Ann. § 574.106(a) (Vernon 2003). 
Having found the evidence legally insufficient to support the trial court’s order of commitment, we
have held that the trial court’s order for temporary mental commitment is invalid. Therefore, the
order authorizing administration of psychoactive medication is also invalid. See id. We sustain
T.A.’s second issue. 
Conclusion
            The evidence is legally insufficient to support the trial court’s order of commitment for
temporary inpatient mental health services. Therefore, the order for administration of psychoactive
medication is invalid.
            We reverse the trial court’s order of commitment for temporary inpatient health services and
for administration of psychoactive medication. We render judgment denying the State’s
applications for court-ordered temporary mental health services and for an order to administer
psychoactive medication.
 
                                                                                                     DIANE DEVASTO 
                                                                                                                 Justice
 
 
Opinion delivered March 31, 2005.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
(PUBLISH)