Opinion issued December 27, 2002











  




In The
Court of Appeals
For The
First District of Texas
 

 
 
 NOS. 01-02-00890-CV        01-02-00891-CV
____________
 
G.H., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 
 

 
 
On Appeal from the Probate Court
Galveston County, Texas
Trial Court Cause Nos. 740 and 740A
 

 
 
O P I N I O N
          In this accelerated case, appellant, G.H., challenges the trial court’s orders,
following a jury trial, that she be involuntarily committed for temporary inpatient
mental health services and be administered psychoactive medications.
          In three points of error, appellant argues that the evidence was legally and
factually insufficient to support the jury’s findings that she was experiencing a
substantial deterioration of her ability to function independently and was unable to
make a rational and informed decision as to whether or not to submit to treatment, and
the evidence was legally insufficient to support the jury’s findings that she lacked the
capacity to make decisions regarding the administration of the proposed medications,
and that it was in her best interest that she be treated with psychoactive medications. 
We reverse and render.
Facts and Procedural Background
          The chief of the Galveston County Sheriff’s Office’s Mental Health Division,
Lieutenant Jaime Castro, testified that on the morning of July 18, 2002, appellant
telephoned him at his office and told him that she wanted to commit her father for a
psychiatric evaluation. Castro had taken appellant to a hospital for mental health
services on at least one prior occasion and was familiar with appellant, having dealt
with her for “around three or four years.”
          Lieutenant Castro further testified that he, accompanied by Galveston County
Sheriff’s Sergeant C. L. Robacker and Deputy McKinney, went to appellant’s house,
where she lived with her father, to perform a welfare check. When Castro arrived at
the house, appellant told him that her father had locked her out of the house and that,
whenever she was in the shower, her father would open the bathroom door and bring
in friends and neighbors to watch her. During Castro’s interview of appellant, he
noticed that her mood changed rapidly back and forth from “sad” to “happy” and
Castro formed the opinion that appellant was “manic.” The deputies found that the
front door of the house was unlocked, and they interviewed appellant’s father, who
calmly denied appellant’s accusations and explained that appellant had been behaving
aggressively toward him. Based upon their investigation, the deputies concluded that
appellant was “delusional,” prepared an application to detain her for a preliminary
psychiatric examination, and transported her to the mental health facility at Rebecca
Sealy Hospital in Galveston.
          The State subsequently filed an application to commit appellant for court-ordered temporary mental health services and to administer psychoactive medication
to her. The trial court signed an order of protective custody, ordering appellant
confined at the hospital pending a trial on her temporary commitment.
          Dr. Michael Stone, a board-certified psychiatrist and associate professor of
psychiatry at the University of Texas Medical Branch, testified that he examined
appellant while she was in the hospital. Based on his evaluation of appellant and a
review of her medical records, Dr. Stone concluded that appellant was mentally ill
and suffered from bipolar disorder. When Dr. Stone interviewed appellant the day
after she was admitted to the hospital, he noted that she spoke very rapidly, her
thoughts were disorganized, and she was extremely irritable. During this interview,
appellant told Dr. Stone that she felt she was not mentally ill and did not need any
medications. Dr. Stone formed the opinion that appellant was not likely to cause
serious harm to herself and had not acted violently toward the hospital staff.
          Dr. Stone further testified that appellant was, as a result of her mental illness,
experiencing a substantial mental or physical deterioration of her ability to function
independently. Dr. Stone offered the following examples of her inability to function:
(1) on the day appellant was brought to the hospital, she refused to stop spitting on
the floor of the common area and was extremely agitated; (2) on the day after she was
admitted, appellant walked around a common area of the hospital wearing wet
clothes, and, when the nurses attempted to help appellant return to her room to put on
dry clothes, she began to disrobe in the common area; and (3) in a group therapy
session, appellant exhibited rapid, loud, and intense mood changes. Appellant’s
medical records, which document such other incidents, were admitted into evidence.
          Dr. Stone offered his opinion that appellant needed to increase the dosage of
her medication, but he conceded that, while taking her medication regularly at the
hospital, appellant’s behavior had improved. However, Dr. Stone was of the opinion
that appellant was unable to make a rational, informed decision as to whether or not
to take her medications and submit to treatment because of her “marked lack of
insight into her illness” and past history of “non-compliance” with taking her
medications. Moreover, appellant could not be successfully treated on an outpatient
basis.
          Appellant testified that she called the deputies to come to her house to take her
father to the hospital for a psychiatric evaluation because he was “taking his fists and
swinging them at [her]” and had locked her out of the house. Appellant stated that,
if discharged from the hospital, she would take her medication and attend her doctor’s
appointments as ordered. On cross-examination, appellant denied spitting on the
floor, disrobing in the common area, and being hostile, belligerent, and abusive
toward the nursing staff. Appellant also denied that, prior to her hospitalization, she
was not taking her medication or cooperating with her case manager.
          At the conclusion of the first phase of trial, the jury found, by clear and
convincing evidence, that appellant was (1) mentally ill, (2) suffering from severe and
abnormal mental, emotional, or physical distress, (3) as a result of her mental illness,
“experiencing substantial mental or physical deterioration of her ability to function
independently, which [wa]s exhibited by [appellant’s] inability, except for reasons of
indigence, to provide for [her] basic needs, including food, clothing, health, or
safety,” (4) unable to make a rational and informed decision as to whether or not to
submit to treatment, and, (5) as a result of her mental illness, unable to participate in
outpatient treatment services effectively or voluntarily. The jury also found that
appellant was not likely to cause serious harm to herself or to others.
          Outside the presence of the jury, Dr. Stone then testified that it was his
recommendation that appellant be committed to the Austin State Hospital. Andrea
Henry, a mental health liaison with the Gulf Coast Center, testified that she was
familiar with appellant’s case, and she also recommended that appellant be placed in
the Austin State Hospital.
          At the second phase of the trial, before the jury, Dr. Stone further testified that
appellant, due to her perception that she was not mentally ill, lacked the capacity to
make a rational decision regarding the administration of psychoactive medication and
that, if appellant was not medicated, her condition would continue to deteriorate as
a result of her mental illness. On cross-examination, Dr. Stone admitted that
appellant had refused to take her prescribed medications because of her expressed
belief that she was allergic to them or they would cause her to suffer adverse side
effects such as brain stem cancer or nervous system damage. However, Dr. Stone
refuted appellant’s allegations that any of the medications prescribed for her would
cause such effects.
          At the conclusion of the second phase of trial, the jury found, by clear and
convincing evidence, that appellant lacked the capacity to make decisions regarding
the administration of the proposed medications and that it was in her best interest that
she be treated with psychoactive medications.
          Based on the jury’s findings and the recommendations of Dr. Stone and Henry,
the trial court ordered appellant immediately committed to the Austin State Hospital
for a period of no more than 90 days.


 Following additional testimony from Dr.
Stone, outside the presence of the jury, the trial court authorized the Texas
Department of Mental Health and Mental Retardation (“MHMR”) to treat appellant
with several different types of medications in the event she refuses to take them
voluntarily.
Order of Commitment
          In her first and second points of error, appellant argues the evidence was
legally and factually insufficient


 to support the jury’s findings, and the trial court’s
corresponding order of temporary commitment, following the first phase of her trial.
Standard of Review
          On an application for court-ordered temporary inpatient mental health services,
the Texas Mental Health Code requires the State to prove, by clear and convincing
evidence, that:
          (1)     the proposed patient is mentally ill; and 
          (2)     as a result of that mental illness the proposed patient:
                    (A)    is likely to cause serious harm to himself;
                    (B)    is likely to cause serious harm to others; or
                    (C)    is:
                              (i)      suffering severe and abnormal mental, emotional, or
physical distress;
 
                              (ii)     experiencing substantial mental or physical deterioration of
the proposed patient’s ability to function independently,
which is exhibited by the proposed patient’s inability,
except for reasons of indigence, to provide for the
proposed patient’s basic needs, including food, clothing,
health, or safety; and
 
                              (iii)    unable to make a rational and informed decision as to
whether or not to submit to treatment.

Tex. Health & Safety Code Ann. § 574.034(a) (Vernon Supp. 2002). A trial court
must specify which criteria form the basis for its decision to grant the State’s
application. Id. § 574.034(c) (Vernon Supp. 2002); K.T. v. State, 68 S.W.3d 887,
889-90 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Here, the jury found
appellant was mentally ill and made positive findings applicable to subsections
(a)(2)(C)(i), (ii), and (iii).
          To establish a matter in dispute by clear and convincing evidence, a party must
present a degree of proof that will produce in the mind of the jury “a firm belief or
conviction” as to the truth of the matter asserted. K.T., 68 S.W.3d at 890 (citing In
re K.C.M., 4 S.W.3d 392, 395 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)). 
In conducting a legal sufficiency review, we consider only the evidence and
inferences tending to support the finding, and we disregard all contrary evidence and
inferences. K.T., 68 S.W.3d at 890; K.C.M., 4 S.W.3d at 395. If any evidence of
probative force exists to support the finding, we will uphold the decision. K.C.M.,
4 S.W.3d at 395. In conducting a factual sufficiency review, we review all the
evidence to determine if it was sufficient to produce a firm belief or conviction in the
minds of the jury of the allegations pleaded. K.T., 68 S.W.3d at 890.
          To constitute clear and convincing evidence under the Mental Health Code, the
evidence must include expert testimony and “evidence of a recent, overt act or a
continuing pattern of behavior that tends to confirm . . . the proposed patient’s
distress and the deterioration of the proposed patient’s ability to function.” Tex.
Health & Safety Code Ann. § 574.034(d)(2) (Vernon Supp. 2002).
Legal Sufficiency
          At trial, it was undisputed that appellant suffers from bipolar disorder, is
mentally ill, and requires medication on a regular basis to help treat her illness. 
However, appellant argues the evidence was legally insufficient to support the jury’s
finding that she was experiencing a substantial mental or physical deterioration of her
ability to function independently. She contends no evidence was presented of a
recent overt act or continuing pattern of behavior which tended to confirm that she
was unable to provide for her own basic needs.
          As noted above, the State presented evidence that appellant was sometimes
delusional, spat on the floor, was angry and irritable toward the hospital staff, had
disorganized thought patterns, exhibited rapid mood swings, and that, on the day after
she was admitted, appellant wore wet clothes and attempted to disrobe in a common
area of the hospital.
          We have previously held that an expert diagnosis of mental illness, standing
alone, is not sufficient to confine a patient for treatment. K.T., 68 S.W.3d at 892;
Mezick v. State, 920 S.W.2d 427, 430 (Tex. App.—Houston [1st Dist.] 1996, no writ). 
Additionally, evidence that merely reflects a patient’s mental illness and need for
hospitalization is not sufficient to meet the State’s burden under section 574.034 of
the Mental Health Code. See, e.g., K.T., 68 S.W.3d at 892 (holding evidence of
patient’s delusion that she was pregnant and had sutures in her vagina not sufficient
to meet required statutory burden); D.J. v. State, 59 S.W.3d 352, 357 (Tex.
App.—Dallas 2001, no pet.) (holding evidence of patient’s psychotic behavior,
delusions that she had undergone surgery by satellite and had electronics implanted
in her not sufficient to meet required statutory burden); T.G. v. State, 7 S.W.3d 248,
251-52 (Tex. App.—Dallas 1999, no pet.) (holding evidence of patient’s delusion that
she was in military and that mail carrier was responsible for her welfare not sufficient
to meet required statutory burden); Johnstone v. State, 961 S.W.2d 385, 387-88 (Tex.
App.—Houston [1st Dist.] 1997, no writ) (holding evidence of patient’s
schizophrenia, auditory hallucinations, paranoia, irritability, and refusal to take
medication not sufficient to meet required statutory burden).



          Here, in addition to Dr. Stone’s diagnosis of appellant’s mental illness, the
State offered Dr. Stone’s expert opinion that appellant was “experiencing a
substantial mental or physical deterioration of her ability to function independently.” 
Dr. Stone’s testimony on this point tracked the language of section 574.034. 
However, as in the cases cited above, the behavior relied on by Dr. Stone as the
factual bases for his opinion regarding appellant’s inability to function independently
constituted nothing more than evidence of appellant’s mental illness, and did not
amount to evidence tending to confirm that appellant was unable to provide for her
own basic needs. The State offered no testimony showing that appellant was unable
to clothe, feed, or house herself, or was unable to provide for her own health or
safety. In fact, the evidence presented established that appellant was adequately
clothed, fed, and housed while living with her father—where appellant testified she
would return to live if discharged.
          The State also offered the testimony of the deputies and Dr. Stone that
appellant’s aggressive behavior was indicative of her potential to cause serious harm
to others or jeopardize her own safety, and thus, demonstrated the deterioration of her
ability to function independently. However, the jury found by clear and convincing
evidence that appellant was not likely to cause serious harm to herself or others, and
the State has not appealed this finding.



          Based on our review of the evidence presented at the commitment proceeding,
we hold that the jury could not have properly found that the State met its burden to
prove, by clear and convincing evidence, the required elements of subsection
574.034(2)(C)(ii) because there was no evidence of a recent overt act or continuing
pattern of behavior tending to confirm a substantial deterioration of appellant’s ability
to function independently to provide for her basic needs. See Tex. Health &
Safety Code Ann. § 574.034(2)(C)(ii), (d)(2).
          In reaching our holding, we note the recent decision from our sister court
affirming a prior temporary commitment order concerning appellant. See In re G.H.,
Nos. 14-02-00310-CV and 14-02-00328-CV (Tex. App.—Houston [14th Dist.] 
October 24, 2002, no pet. h.) (designated for publication). In its majority opinion, the
court of appeals concluded, based on testimony concerning appellant’s delusional
behavior and her refusal to take prescribed medications, that the evidence was legally
and factually sufficient to support the trial court’s decision to temporarily commit
appellant. Id. slip op. at 2-3. Because the majority opinion in that case does not
follow the reasoning of K.T. or of the cases cited therein, which hold that mere
evidence of a patient’s mental illness and refusal to take medication is not sufficient
to sustain the State’s statutory burden, we disagree with the analysis applied by the
majority opinion of that court.


 See K.T., 68 S.W.3d at 892.
          We sustain appellant’s first point of error. Because of our disposition of
appellant’s first point of error, we need not consider the factual sufficiency challenge
presented in her second point of error.
Order to Administer Medication
          In her third point of error, appellant challenges the sufficiency of the evidence
to support the jury’s findings that she lacked the capacity to make decisions regarding
the administration of the proposed medications and that it was in her best interest that
she be treated with psychoactive medications.
          A trial court may issue an order authorizing the administration of psychoactive
medications only if the proposed patient is under an order for involuntary mental
health services. Tex. Health & Safety Code Ann. § 574.106(a)(1) (Vernon Supp.
2002). Therefore, because we reverse the trial court’s order of commitment, we must
also reverse its order to administer psychoactive medications. See K.T., 68 S.W.3d
at 894.
          We sustain appellant’s third point of error.
Conclusion
          We reverse the orders of the trial court, and we render judgment denying the
State’s applications to commit appellant for court-ordered temporary mental health
services and to administer psychoactive medications to her.
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Nuchia, Jennings, and Radack.

Publish. Tex. R. App. P. 47.