Opinion issued January 12, 2006







     




In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00587-CV




ANNESTINE ARMSTRONG, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the Probate Court No. 3
Harris County, Texas
Trial Court Cause No. 111195




O P I N I O N

          Appellant, Annestine Armstrong, (Armstrong) appeals from an order of
involuntary commitment to the Harris County Psychiatric Center (HCPC) as an in-patient, for not more than 90 days, for court-ordered temporary mental health
services.


 In two issues, Armstrong contends that the evidence is legally and factually
insufficient to support the judgment rendered by the trial court. We conclude that the
evidence is legally insufficient to support the commitment order and therefore need
not address Armstrong’s factual insufficiency challenge. We reverse and render
judgment in favor of Armstrong.
Background
          On April 28, 2004, Mary Armstrong, Armstrong’s mother, (mother) requested
that the trial court commit Armstrong involuntarily to the HCPC. The mother’s
application included her affidavit attesting that Armstrong was hearing voices coming
from the walls of the house, telling “them” to get out of the walls, refusing to allow
people into the house to help clean it, and cursing. According to the affidavit,
Armstrong “need[ed] help.” After the application, two physicians, K. Cowan and
Olga Demina, examined Armstrong and completed certificates of medical
examination. One diagnosed her as bipolar and manic with delusions, and the other
diagnosed her as bipolar and manic with psychosis, but both concluded that she was
mentally ill and that, as a result of that mental illness, she was likely to cause serious
harm to herself or to others. 
          Both medical certificates relayed underlying facts supporting their opinions. 
Dr. Cowan noted that Armstrong was poorly groomed, irritable, paranoid, had rapid
and pressured speech, insisted that she was suing the hospital, insisted that she should
not be at the hospital, denied her illness, and was “quite grandiose,” although she also
appeared to have above average intelligence and appeared to be educated. Dr. Cowan
further stated in the certificate that Armstrong’s mother had reported that Armstrong
was deteriorating, refusing to give people access to her house, responding to the
walls, and claiming that the neighbors were harassing her. Dr. Demina reported that
Armstrong was very belligerent, hyper-talkative, paranoid, illogical, talked to walls,
had poor insight and judgment, was aggressive and verbally abusive toward her
mother, and would deteriorate if not hospitalized. Both certificates also showed that
Armstrong had a history of medical problems, including an unspecified
gastrointentinal problem, a history of diabetes, blindness in one eye, glaucoma, an
infection, and diverticulitis. 
          After receiving the mother’s application, her supporting affidavit, and the
physicians’ certificates, the trial court placed Armstrong into protective custody
pending the involuntary commitment hearing. See Johnstone v. State, 961 S.W.2d
385, 387 n.1 (Tex. App.—Houston [1st Dist.] 1997, no writ) (stating that in
commitment case, trial court may consider medical certificates not admitted into
evidence). At the involuntary commitment hearing, the trial court considered
testimony by Dr. Douglas Samuels, Armstrong and her mother, in addition to the
medical certificates prepared by Drs. Cowan and Demina.
           Dr. Samuels testified that although Armstrong thwarted his attempts to examine
her, he was able to diagnose her from his observations of her interactions with others
and by reviewing her medical records. Dr. Samuels diagnosed Armstrong with
bipolar disorder, and noted that “[s]he has been in this hospital six times and she’s
had this diagnosis.” Dr. Samuels described Armstrong as very hostile, paranoid,
belligerent, irritable, oppositional, verbally aggressive, cursing, and as having
diminished sleep and diminished weight. Dr. Samuels testified that Armstrong was
refusing to take the recommended psychiatric medications, which resulted in her
inability to “demonstrate any usable insight.” In addition, she refused medical
treatment for her physical problems, including medications for high blood pressure,
diabetes, and blindness in one eye, although she was taking eye drops for glaucoma. 
Dr. Samuels stated that Armstrong was treated recently in a hospital with insulin for
her diabetes, but was not currently taking medication for her diabetes or allowing
doctors to draw her blood to determine her blood sugar level. Moreover, Armstrong
only “participates minimally” in the “other types of therapies” offered to her at HCPC
and had no “real appreciation” for the consequences of her behavior. Although he
acknowledged that she was not violent, Dr. Samuels concluded that Armstrong
should remain at HCPC because she was likely to cause harm to herself due to her
refusal to take medical treatment for “some serious conditions.” 
          Armstrong’s 75-year-old mother testified that Armstrong paid rent and lived
with her before being admitted to HCPC. Her mother testified that Armstrong did not
believe that anything was wrong with her and refused to take medications, which
caused her mother concern because Armstrong had suffered for a long time from high
blood pressure, diabetes, and diarrhea. Although Armstrong had previously sought
medical help from a clinic near their house, she stopped going to the clinic and no
longer had any prescribed medications to take. Her mother’s concerns for Armstrong
arose when police officers visited her home in response to a letter from Armstrong
claiming that listening devices were in the walls of the house. 
          Armstrong testified that she had been hospitalized four times in the past nine
months before her current stay at HCPC. One of her earlier hospitalizations was at
HCPC, but Armstrong stated that she was released without the requirement of any
further psychiatric follow-up visits. The three other hospitalizations were due to
diarrhea caused by a bacterial infection that was not resolved by three courses of
antibiotics. Armstrong denied any desire to hurt herself or others. She claimed that
her neighbor was responsible for the noise in the walls by banging on the side of the
house and screen door with trash-can lids. Armstrong stated that she no longer
needed psychiatric medications because she was sleeping at night, no longer needed
blood pressure medicine because a doctor had taken her off it, and no longer needed
diabetes medication because she controlled her diabetes through diet, although she
was seeking treatment for the diarrhea. At the end of Armstrong’s testimony, the trial
court determined that Armstrong was in need of involuntary commitment.


 
          The trial court’s judgment states that the court found by clear and convincing
evidence that Armstrong is mentally ill and as the result of the mental illness
(i) is suffering severe and abnormal mental, emotional, or
physical distress;
(ii) is experiencing substantial mental or physical deterioration of
her ability to function independently, except for reasons of
indigence, to provide for the proposed patient’s basic needs;
including food, clothing, health, or safety; and 
(iii) is not able to make a rational and informed decision as to
whether to submit to treatment.




The trial court’s judgment thus tracks Tex. Health & Safety Code §
574.034(a)(1)–(2)(c)(i)–(iii) (Vernon 2003). The trial court’s judgment did not recite
that Armstrong was likely to cause harm to herself or to others as a result of her
mental illness and is thus premised only on subsection (a)(1)–(2)(c)(i)–(iii) of section
574.034 and not on subsection (a)(1)–(2)(A)–(B). See Tex. Health & Safety Code
§ 574(a).
Legal Sufficiency
          Armstrong contends that the evidence is legally insufficient to support the three
findings recited in the trial court’s judgment because the evidence fails to establish
“a recent overt act” or a “continuing pattern of behavior” for each of those findings. 
 See Tex. Health & Safety Code § 574(a), (d) (Vernon 2003). We conclude that
the evidence is legally insufficient to establish the second of the three findings, and
therefore do not reach Armstrong’s complaints concerning the first and third of the
three findings. 
          A court receiving an application for court-ordered temporary inpatient mental
health services under the Health and Safety Code may order a person to receive those
services when clear and convincing evidence shows that the proposed patient is
mentally ill, and that, as a result of that mental illness, the person is either
 
(A) likely to cause serious harm to himself; 
(B) likely to cause serious harm to others; or 
(C) is:
(i) suffering severe and abnormal mental, emotional, or
physical distress; 
(ii) experiencing substantial mental or physical
deterioration of the proposed patient’s ability to function
independently, which is exhibited by the proposed patient’s
inability, except for reasons of indigence, to provide for the
proposed patient’s basic needs, including food, clothing,
health, or safety; and 
(iii) unable to make a rational and informed decision as to
whether or not to submit to treatment. 

Tex. Health & Safety Code Ann. § 574.034(a). The trial court’s judgment found
Armstrong needed mental commitment under § 574.034(a)(C) only, and we therefore
limit our review to that issue. See Tex. Health & Safety Code Ann. § 574.034(c);
Johnstone, 961 S.W.2d at 388 (stating that trial court must specify which of three
criteria found in Section 574.034(a) forms basis of commitment order and that review
is limited to criteria identified).
          The required burden of proof under the Health Code is clear and convincing
evidence. See Tex. Health & Safety Code Ann. § 574.034(a). Subsection (d) of
section 574.034 specifies that, for evidence to be clear and convincing under
subsection 574.034(a): the evidence must include expert testimony and, unless
waived, evidence of a “recent overt act” or a “continuing pattern of behavior” that
tends to confirm either the likelihood of serious harm to the proposed patient or
others or the proposed patient’s distress and the deterioration of the proposed
patient’s ability to function. Tex. Health & Safety Code Ann. § 574.034(d). The
trial court need not specify which of these alternatives for clear and convincing
evidence supports its subsection 574.034(a) findings. J.M., 2005 WL 1606931, at *5;
M.S. v. State, 137 S.W.3d 131, 135 n.5 (Tex. App.—Houston [1st. Dist.] 2004, no
pet.).
          “Clear and convincing evidence” means “that measure or degree of proof which
will produce in the mind of the trier of fact a firm belief or conviction as to the truth
of the allegations sought to be established.” State v. Addington, 588 S.W.2d 569, 570
(Tex. 1979); J.M. v. State, Nos. 01-05-00146-CV, 01-05-00147-CV, 2005 WL
1606931, at *4 (Tex. App.—Houston [1st Dist.] July 7, 2005, no pet. h.). An expert
opinion recommending involuntary commitment must be supported by the factual
bases on which it is grounded and not simply recite the statutory criteria. J.M., 2005
WL 1606931, at *7; K.T. v. State, 68 S.W.3d 887, 893 (Tex. App.—Houston [1st
Dist.] 2002, no pet.). Thus, the expert should describe the patient’s specific behaviors
on which his or her opinion is based. J.M., 2005 WL 1606931, at *7. 
          When the burden of proof at trial is clear and convincing evidence, an appellate
court should conclude that the evidence is legally insufficient if, after reviewing all
of the evidence in a light most favorable to the trial court’s ruling, no reasonable
factfinder could form a firm belief or conviction that the matter that must be proven
is true. In re J.F.C., 96 S.W.3d 256, 264–65 (Tex. 2002); accord Diamond Shamrock
Ref. Co. v. Hall, 168 S.W.3d 164, 166 (Tex. 2005) (applying J.F.C. heightened
standard when burden in trial court was by clear and convincing evidence). To give
appropriate deference to both the factfinder’s determinations and the role of the
reviewing court, examining the evidence in the light most favorable to the judgment
means that a reviewing court must assume that the factfinder resolved disputed facts
in reaching its determination if a reasonable factfinder could do so. J.F.C., 96 S.W.3d
at 266. A corollary to this requirement is that a court should disregard all evidence
that a reasonable factfinder could have disbelieved or found to have been incredible. 
Id.
          In summary, for the evidence to be legally sufficient to support the trial court’s
findings, the record must show that when Armstrong was committed, she was
experiencing substantial mental or physical deterioration of her ability to function
independently, which was exhibited by her inability, except for reasons of indigence,
to provide for her basic needs, including food, clothing, health, or safety. See Tex.
Health & Safety Code Ann. § 574.034(a)(2)(C). Additionally, the State’s
evidence must include expert testimony and evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm the deterioration of the proposed
patient’s ability to function. See Tex. Health & Safety Code Ann. § 574.034(d). 
          Viewed in a light most favorable to the trial court’s ruling, the evidence shows
that Armstrong was mentally ill and refusing treatment for her medical and
psychiatric conditions, which resulted in her failure to have any “real appreciation”
for the consequences of her behavior. She had been hospitalized six times in the
recent past and exhibited many symptoms of mental illness. Her refusal to submit to
treatment was resulting in her deterioration, inability to “demonstrate any usable
insight,” and refusal to allow any laboratory tests to determine her medical condition. 
Although these circumstances are quite serious, as explained below, they do not
establish that Armstrong was experiencing substantial mental or physical
deterioration of her ability to function independently, as exhibited by her inability to
provide for her basic needs. See Tex. Health & Safety Code Ann. §
574.034(a)(2)(C).
1.       Mental Illness
          The evidence shows, and Armstrong does not contest, that she is mentally ill. 
Evidence of mental illness, however, does not establish that she was experiencing
substantial mental or physical deterioration of her ability to function independently
exhibited by her failure to provide for her basic needs. See Tex. Health & Safety
Code Ann. § 574.034(a)(2)(C). We begin by noting that the Health and Safety Code
requires that mental illness be shown as a separate inquiry from the issue of a person’s
deterioration of ability to function. See Tex. Health & Safety Code Ann. §
574.034(a)(2)(C)(ii) (stating that evidence must show that person is mentally ill, and
that as a result of that mental illness, the person is experiencing substantial mental or
physical deterioration of the person’s ability to function independently to provide for
basic needs). That a person is mentally ill or has been previously hospitalized for
mental illness, therefore, is no evidence of the person’s inability to function
independently. See Johnstone, 961 S.W.2d at 389 (citing Broussard v. State, 827
S.W.2d 619, 622 (Tex. App.—Corpus Christi 1992, no writ) (holding that six or seven
prior admissions for same mental illness insufficient to justify commitment for
inability to function independently)); K.T., 68 S.W.3d at 892. Moreover, evidence of
the effects of mental illness does not necessarily establish evidence of substantial
mental or physical deterioration unless the effects impair a person’s ability to function
independently to provide for basic needs. For example, poor grooming is insufficient
“to justify depriving an individual of her liberty.” J.M., 2005 WL 1606931 at *9. 
Poor hygiene and “oppositional behavior” also demonstrate mental illness, but alone
do not rise to the level of an overt act or pattern of behavior that confirms a substantial
deterioration of a person’s ability to function independently to provide for her basic
needs. Id. Evidence of poor insight and judgment, lack of trust towards others,
insomnia, and diminished weight are likewise serious health problems, but they must
be coupled with evidence that Armstrong is suffering substantial deterioration of her
ability to provide for her basic needs. See id. Although the evidence shows that
Armstrong is mentally ill, has physical health problems, and has been previously
hospitalized for the mental illness, the State offered no testimony that, as a result of
her mental condition, she is unable to function independently as exhibited by her
inability to provide for her basic needs. 
 

2.       Refusal of Treatment 
          The evidence shows that Armstrong refused treatment for her chronic medical
conditions, such as hypertension and diabetes, that she had no appreciation of the
consequences of those refusals, which caused her health to deteriorate, and that her
continued refusal would result in more severe deterioration. But the Health and Safety
Code requires that when the person is involuntarily committed, the person must then
be “experiencing substantial mental or physical deterioration of the proposed patient’s
ability to function independently.” Tex. Health & Safety Code Ann. § 574.034(a). 
Evidence that the person will experience “substantial mental or physical deterioration”
in the future is not sufficient. See K.T., 68 S.W.3d at 889 (holding evidence legally
insufficient to show recent overt act or continuing pattern of behavior tending to
confirm substantial deterioration of ability to provide for basic needs when no
evidence showed refusal to eat before hospitalization or that refusal actually resulted
in malnutrition or other harm, despite evidence that K.T. had been to number of
hospitals complaining about non-existent sutures); J.M., 2005 WL 1606931, at *9
(holding that more than potential harm is necessary to commit patient involuntarily). 
          When Armstrong was committed, she was living with her mother and paying
rent. No evidence in the record shows that Armstrong was experiencing substantial
mental or physical deterioration of her ability to function independently at that point
in time. The evidence shows only that she was “beginning” to deteriorate because of
her refusal to take the medications for her chronic health problems. No evidence
shows whether or when that deterioration would result in her “substantial” mental or
physical deterioration, nor indicates that she was unable to function independently. 
See G.H. v. State, 96 S.W.3d 629, 635 (Tex. App.—Houston [1st Dist.] 2002, no pet.)
(holding evidence legally insufficient to show substantial mental or physical
deterioration despite physician’s opinion that G.H. would continue to deteriorate if not
medicated). Moreover, no evidence shows that Armstrong refused treatment for any
emergent, imminent, life-threatening illness; her refusals to submit to laboratory work
or to take psychiatric and high blood pressure medications do not establish that she
had a substantial mental or physical deterioration in her ability to function
independently. See Johnstone, 961 S.W.2d at 389 (holding that evidence of patient’s
repeated refusals to take medication legally insufficient to show overt act or
continuing pattern of behavior despite physician’s testimony that patient’s ability to
function independently would continue to deteriorate without medication); Broussard,
827 S.W.2d at 620 (holding that refusal to take medication, six or seven prior
admissions for same condition, delusional, incoherent thoughts, and psychotic
behavior insufficient to justify commitment on grounds of mental distress and inability
to function independently); In re J.S.C., 812 S.W.2d 92 (Tex. App.—San Antonio
1991, no writ) (holding that refusal to take medication and physician’s testimony
regarding deterioration of patient’s ability to function independently and inability to
care for himself insufficient to show overt act or continuing pattern of behavior). 
3.       Basic Need to Prevent Serious Harm to Herself or Others
          The State contends that Dr. Cowan’s and Dr. Demina’s opinions that Armstrong
was likely to cause serious harm to herself or others is evidence of her inability to
provide for her basic needs of maintaining her health and safety. The trial court,
however, did not base its judgment on the likelihood that Armstrong would cause
serious harm to herself or others. See Tex. Health & Safety Code Ann. §
574.034(a)(1)–(2)(A)–(B). As the language of section 574.034(a)(1)–(2)(A)–(B)
clarifies, subsections (A) and (B) of section 574.034(a)(1)–(2) constitute separate,
alternative inquiries that are distinct from Armstrong’s inability to function
independently and provide for her basic needs, as contemplated by subsection (C) of
section 574.034(a)(1)–(2). See Tex. Health & Safety Code Ann. § 574.034(a)
(requiring that, as a result of mental illness, person is either (A) likely to cause serious
harm to himself; or (B) likely to cause serious harm to others; or (C) . . . (ii)
experiencing substantial mental or physical deterioration of ability to function
independently . . . to provide for . . . basic needs, including food, clothing, health, or
safety).
          Dr. Cowan’s and Dr. Demina’s opinions that Armstrong was likely to cause
serious harm to herself or others pertain only to section 574.034(a)(1)–(2)(A)–(B)’s
inquiries into probable future consequences of Armstrong’s behavior. The physicians’
opinions are not probative of Armstrong’s present inability to provide for her basic
needs of maintaining her health and safety because she is “experiencing substantial
mental or physical deterioration.” See Tex. Health & Safety Code Ann. §
574.034(a) (1)–(2)(C)(ii). 
          Although we agree with the State that subsection (a)(1)–(2)(C)’s list of basic
needs including “food, clothing, health, or safety” is illustrative and not exhaustive,
there is no evidence in the record that, when Armstrong was involuntarily committed,
she was “experiencing substantial mental or physical deterioration” of her ability to
function independently due to an inability to provide for her basic needs. Having
reviewed the record as a whole, we conclude that no evidence in the record shows that
Armstrong was unable to function independently. 
                                                         Conclusion
          We conclude that the evidence is legally insufficient to show that Armstrong
was experiencing substantial mental or physical deterioration of her ability to function
independently to provide for her basic needs. Accordingly, we hold that the evidence
is legally insufficient to support the trial court’s judgment ordering temporary
inpatient mental health services.
 

          We reverse the judgment ordering temporary inpatient mental health services
signed by the trial court, and we render judgment denying the application to commit
Armstrong for court-ordered temporary mental health services.
 
 
                                                             Elsa Alcala
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Alcala and Bland.