# NO. 12-17-00331-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR* | § | *APPEAL FROM THE* |
| *THE BEST INTEREST* | § | *COUNTY COURT AT LAW* |
| *AND PROTECTION OF A.K.* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

A.K. appeals from an order for temporary inpatient mental health services, and an order authorizing the Texas Department of State Health Services (the Department) to administer psychoactive medication. In two issues, A.K. asserts the evidence is legally and factually insufficient to support the trial court's orders. We reverse and render.

## BACKGROUND

On October 5, 2017, an application for court ordered temporary mental health services was filed requesting the trial court to commit A.K. to the Rusk State Hospital (the Hospital) for a period not to exceed ninety days. At the time the application was filed, A.K. was a patient at the Hospital. The application was supported by two physician's certificates of medical examination for mental illness. The first certificate stated that Nora J. Davis, M.D. examined and evaluated A.K. and diagnosed him with schizoaffective disorder—manic type. Robert Bouchat, M.D. also examined and evaluated A.K., and diagnosed him with bipolar disorder.

According to Dr. Davis and Dr. Bouchat, A.K. was mentally ill; was suffering severe and abnormal mental, emotional, or physical distress; was experiencing substantial mental or physical deterioration of his ability to function independently; and was unable to make a rational and informed decision as to whether or not to submit to treatment. As the basis for his opinion, Dr. Bouchat reported that A.K. said he was a "zillionaire" and King David; was adamant that he

was not taking any psychiatric medications; was floridly delusional; had pressured speech and labile mood; was impulsive; and appeared prone to irrational and disruptive behavior.

Dr. Davis stated that as the bases for her opinion, A.K. stated that he was "King David . . . King of the U.S. . . . King of many nations," the father of Michael Jackson, and that he did not need psychiatric medication. Further, Dr. Davis stated that A.K. had grandiose delusions, fragmental thought processes, and disorganized illogical, not goal directed, thoughts; had no insight into his mental illness; had rapid pressured loud speech, tangential with loose association; and homicidal ideations towards police. Additionally, Dr. Davis completed an application for an order to administer psychoactive medication.

The trial court conducted a hearing on the applications. After the hearing, the trial court found, by clear and convincing evidence, that A.K. was mentally ill and was suffering severe and abnormal mental, emotional, or physical distress; was experiencing substantial mental or physical deterioration of his ability to function independently, exhibited by A.K.'s inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety; and was unable to make a rational and informed decision as to whether or not to submit to treatment. The trial court rendered an order for temporary inpatient mental health services, committing A.K. to the Hospital for a period not to exceed ninety days. The trial court also rendered an order authorizing the Department to administer psychoactive medications to A.K. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, A.K. argues that the evidence is legally and factually insufficient to support the order for temporary inpatient mental health services.

### Standard of Review

In a legal sufficiency review where the burden of proof is clear and convincing evidence, we must look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its findings were true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder settled disputed facts in favor of its finding if a reasonable fact finder could do so and disregard all evidence that a reasonable fact finder could have disbelieved or found incredible. *Id.* This does

2

not mean that we are required to ignore all evidence not supporting the finding because that might bias a clear and convincing analysis. *Id.*

## Temporary Inpatient Commitment Order

The trial judge may order a proposed patient to receive court ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that the proposed patient is a person with mental illness, and, as a result of that mental illness, he is likely to cause serious harm to himself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental, emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of his ability to function independently, which is exhibited by his inability, except for reasons of indigence, to provide for his basic needs, including food, clothing, health, or safety, and (iii) unable to make a rational and informed decision as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West Supp. 2017).

"Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979). To be clear and convincing under this statute, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and the deterioration of his ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (West Supp. 2017). The statutory requirements for an involuntary commitment are strict because it is a drastic measure. *In re C.O.*, 65 S.W.3d 175, 182 (Tex. App.—Tyler 2001, no pet.).

## Analysis

At the hearing, Dr. Bouchat's and Dr. Davis's certificates of medical examination for mental illness were admitted into evidence. We note that nothing in the Texas Health and Safety Code authorizes a trial court to base its findings solely on the physicians' certificates. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.001-.047 (West 2017 & Supp. 2017). Pleadings, such as the application here, are not evidence that the statutory standard has been met. *See id.* § 574.031 (West 2017) (stating that the Texas Rules of Evidence apply to the hearing for court ordered mental health services unless the rules are inconsistent with the subtitle); *In re E.T.*, 137 S.W.3d 698, 700 (Tex. App.—San Antonio 2004, no pet.); *see also Laidlaw Waste Sys. (Dallas), Inc. v.*

*City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995) (noting that, generally, pleadings are not competent evidence, even if sworn or verified).

Further, expert testimony confirming mental illness, standing alone, will not support an involuntary commitment. *See T.G. v. State*, 7 S.W.3d 248, 252 (Tex. App.—Dallas 1999, no pet.). Evidence of continuing delusional or paranoid behavior merely reflects that an individual is mentally ill and in need of hospitalization, but does not provide the overt act or continuing pattern of behavior necessary to support a commitment. *See In re C.O.*, 65 S.W.3d at 182; *Broussard v. State*, 827 S.W.2d 619, 622 (Tex. App.—Corpus Christi 1992, no writ). An expert opinion recommending commitment must be supported by the factual bases on which it is grounded and not simply recite the statutory criteria. *See J.M. v. State*, 178 S.W.3d 185, 193 (Tex. App—Houston [1st Dist.] 2005, no pet). What is necessary is the expert's description of the patient's specific behaviors on which the expert's opinion is based. *See id.* We must examine the record to determine whether there is clear and convincing evidence showing an overt act or a continuing pattern of behavior that tends to confirm the likelihood of A.K.'s distress and the deterioration of his ability to function. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d).

Here, Dr. Davis testified at the hearing and stated that she diagnosed A.K. with schizoaffective disorder—manic type. She did not believe that A.K. could provide for his basic needs, including food, clothing, health, and safety outside of the hospital. Nor did she believe A.K. could make a rational and informed decision about whether to submit to treatment. Dr. Davis believed that A.K.'s condition was likely to deteriorate if he did not remain at the Hospital and receive treatment. According to Dr. Davis, A.K. committed a recent overt act before he arrived at the Hospital. She said that A.K. was in the Gregg County jail for misdemeanor criminal trespassing. The jail reported that A.K. was overtly psychotic, and exhibited manic behavior and bizarre delusions. Dr. Davis stated that A.K. made statements indicating that he suffered from a mental illness such as he was "King David, King of the U.S., King of many nations." Dr. Davis reported that A.K. claimed that he was the father of Michael and Janet Jackson. She believed that A.K. had recurring episodes when not taking his medication. She reported that A.K. had been loud, used racial slurs, and used profanity. Dr. Davis stated that A.K.'s symptoms and behaviors were indicative of a mental illness, opined that the Hospital was the least restrictive available treatment option for A.K., and that he would need to remain in the

4

Hospital for ninety days.  However, Dr. Davis also reported that A.K. had been eating, taking showers, brushing his teeth, and clothing himself since arriving at the Hospital.

At the hearing, A.K. made several outbursts during Dr. Davis's testimony.  He stated that he was a decoy, and that he worked for the Federal Marshall.  He called Dr. Davis a "racist piece of shit."  He also appeared to tell his counsel to be quiet and that he "ain't talking to you."  A.K. also said in an outburst that he was the father of Michael Jackson, that he had a birthright, and that "Billie" was his son.  During Dr. Davis's testimony, A.K. told his counsel that "[y]ou are fired," and stated that he did not hire him.  He said "I fired this man last time, and you are fired too, cracker. You are fired. You are a piece of crap.  You are behind them, the rapists of all these people here in America." A.K. also said that he was his own attorney, a genius, and a district attorney.  He asked if Dr. Davis had ever called anyone the n-word.  A.K. testified that if he were released after the hearing, he would go to his palace because he was a king.  His palace was in Longview and he had "a palace all over."  He said that Mariah Carey was his wife, that he was a zillionaire, that he hit the lottery when he was one year old, and that he was set for life.

If A.K. were released, he stated that he would be able to provide everything for himself and would always take care of his children.  He claimed that he had newborn babies and one child on the way. According to A.K., his children were very productive in society.  He said that he could go home if released and did not need to stay with his family.  Instead, he said, his family lived with him because he was "filthy rich" and owned Motown.  A.K. also claimed that his last name was "Jackson," that he was not a psychiatric patient, and that "they" were the rapists. He told the trial court that he was a Christian and a man of integrity.  A.K. stated that he was educated, that he had a degree from Harvard University, and that he was a genius and a mastermind. He stated that he wanted to start the first women's professional basketball team and donated twelve "zillion dollars" to start the first women's football team.  Additionally, A.K. told the trial court that "he racist," and he "jumped on me and handcuffed and beat me down for no reason."  Then, he said that "[h]e's sending me to classroom America. I sued them."  It was not apparent who A.K. was referring to in his last statements.

Our review of the record demonstrates that the State proved nothing more than that A.K. is mentally ill and in need of hospitalization, which is insufficient to satisfy the statutory standard.  *See **In re C.O.***, 65 S.W.3d at 181.  Dr. Davis did not offer any specific evidence of an overt act or a continuing pattern of behavior that would generally affect A.K.'s ability to function

5

independently on a daily basis without the imposition of mental health services. *See In re B.A.*, No. 12-16-00183-CV, 2016 WL 4628106, at *3 (Tex. App.—Tyler Sept. 7, 2016, no pet) (mem. op.); *see also Broussard*, 827 S.W.2d at 622. To the contrary, Dr. Davis testified that A.K. was eating, taking showers, brushing his teeth, and clothing himself since arriving at the Hospital. She provided no evidence of A.K.'s specific behaviors that tended to confirm the likelihood of his distress and the deterioration of his ability to function. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). Additionally, the State must show more than A.K.'s delusions, such as those related to his being a king, having a palace, being a "zillionaire," and being the father of members of the Jackson family, which merely confirm A.K.'s mental illness and need for hospitalization, to meet the evidentiary standard for a temporary commitment. *See In re B.A.*, 2016 WL 4628106, at *3; *see also In re C.O.*, 65 S.W.3d at 182; *Broussard*, 827 S.W.2d at 622.

Because Dr. Davis's opinions were not supported by a factual basis or by a description of specific behaviors on which her opinions about A.K. were based, we cannot say that her opinions would lead a reasonable trier of fact to form a firm belief or conviction that A.K. engaged in a recent overt act or a continuing pattern of behavior that tends to confirm A.K.'s distress and the deterioration of his ability to function. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). Thus, viewing the evidence in the light most favorable to the trial court's findings, we conclude that the evidence is legally insufficient to support the trial court's finding based upon Section 574.034(d) of the Texas Health and Safety Code. *See id.*; *see also In re B.A.*, 2016 WL 4628106, at *4. For this reason, we need not address A.K.'s factual sufficiency complaint. *See* TEX. R. APP. P. 47.1. We sustain A.K.'s first issue.

**Order to Administer Psychoactive Medication**

In his second issue, A.K. challenges the legal sufficiency of the evidence to support the trial court's order to administer psychoactive medication. A trial court may issue an order authorizing the administration of psychoactive medications only if the proposed patient is under an order for inpatient mental health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1) (West 2017). Because we reverse the trial court's order for temporary inpatient mental health services, we must also reverse its order to administer psychoactive medications. *See G.H. v. State*, 96 S.W.3d 629, 635 (Tex. App.—Houston [1st Dist.] 2002, no pet.). We sustain A.K.'s second issue.

### CONCLUSION

Based upon our review of the record, we conclude that the evidence is legally insufficient to support the trial court's order for temporary inpatient mental health services, and order authorizing the Texas Department of State Health Services to administer psychoactive medication. We *reverse* the trial court's order for temporary inpatient mental health services and order to administer psychoactive medication, and *render* judgment denying the State's application for court ordered temporary mental health services and the State's application for an order to administer psychoactive medication.

GREG NEELEY
Justice

Opinion delivered March 7, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 7, 2018**

**NO. 12-17-00331-CV**

**THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF A. K.**

Appeal from the County Court at Law

of Cherokee County, Texas (Tr.Ct.No. 42218)

THIS CAUSE came to be heard on the appellate record and the briefs filed herein, and the same being considered, it is the opinion of this court that the trial court's order for temporary inpatient mental health services, and order authorizing the Texas Department of State Health Services to administer psychoactive medication should be reversed and judgment rendered denying the State's application for court ordered temporary mental health services and the State's application for an order to administer psychoactive medication.

It is therefore ORDERED, ADJUDGED and DECREED by this court that the trial court's order for temporary inpatient mental health services, and order authorizing the Texas Department of State Health Services to administer psychoactive medication be, and the same is, hereby **reversed** and judgment is **rendered denying** the State's application for court ordered temporary mental health services and the State's application for an order to administer psychoactive medication and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*